# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **GWENDOLYN HALL**, on behalf of themselves and all others similarly situated, | : : : | CIVIL ACTION |
| *Plaintiffs*, | : : | |
| v. | : : | |
| **ACCOLADE, INC.** | : | No. 17-3423 |
| *Defendant*. | : | |

## **MEMORANDUM**

PRATTER, J.                                                                                                                                                     AUGUST 22ND, 2019

In this putative class and collective action, the named plaintiff, Gwendolyn Hall, brought both (1) a Fair Labor Standards Act collective action, and (2) a Pennsylvania Minimum Wage Act class action. According to Ms. Hall, Accolade, Inc. misclassified Health Assistants as overtime exempt and underpaid those employees as to overtime that should have been paid.

Early in the life of this litigation, the parties reached a settlement agreement. They now request preliminary approval of that proposed settlement. After holding a hearing on the proposed class settlement and notice provisions, and upon consideration of counsel's revisions to the notices as called for by the Court, the Court grants the motion for preliminary approval because it is within the range of possible approval, the requirements of conditional class certification are met, and the notice plan is reasonably designed to notify class members of the settlement agreement.

### **BACKGROUND**

Accolade helps employers and insurance companies administer health insurance policies. To that end, Accolade employs Health Assistants who provide customer service, primarily by fielding calls from customers about issues related to benefits, claims, and the like. Accolade employs Health Assistants in two relevant states, Pennsylvania and Arizona.

Prior to 2016, Accolade deemed its Health Assistants to be exempt from the overtime pay mandates of the Fair Labor Standards Act and Pennsylvania Minimum Wage Act, which are statutory schemes identical to each other in practice. Beginning in 2016, however, Accolade changed its compensation structure and reclassified Health Assistants as overtime-eligible. That change, and the company's prior treatment of Health Assistants, precipitated this lawsuit.

Gwendolyn Hall was an Accolade Health Assistant in Pennsylvania. Ms. Hall filed this lawsuit alleging the commission of violations of the FLSA and PMWA over two separate time periods:

> - **From August 1, 2014 – November 28, 2016**, seeking back pay for overtime and alleging that Health Assistants were *misclassified* as overtime exempt.
>
> - **After November 28, 2016**, seeking compensation for *unpaid hours* and alleging that, although Health Assistants were classified as overtime-eligible starting on November 28, 2016, their overtime pay failed to reflect 15 minutes that the Health Assistants spent logging into computer systems.

The settled PMWA claim is *only* for the misclassification of Health Assistants. Ms. Hall's PMWA claim is on behalf of Pennsylvania Health Assistants. The PMWA claim is a Federal Rule 23 class action.

The settled FLSA claims include both misclassification *and* unpaid hours claims. Ms. Hall brings her FLSA claim on behalf of *all* Accolade Health Assistants—including both Pennsylvania-based and Arizona-based Health Assistants. The FLSA claim is a collective action (requiring Health Assistants to opt-in to participate in the settlement). The Court conditionally certified the FLSA collective in 2017.

**LEGAL STANDARD**

"In evaluating a class action settlement under Rule 23(e), a district court determines whether the settlement is fundamentally fair, reasonable, and adequate." *Ehrheart v. Verizon*

*Wireless*, 609 F.3d 590, 592 (3d Cir. 2010) (citing Fed. R. Civ. P. 23(e)). The Court's inquiry is "even more rigorous" in cases like this one, "'where settlement negotiations precede class certification, and approval for settlement and certification are sought simultaneously.'" *In re Pet Food Prod. Liab. Litig.*, 629 F.3d 333, 350 (3d. Cir. 2010) (quoting *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534 (3d Cir. 2004)).

Recently revised Federal Rule 23(e) explicitly discusses the requirements for class settlements. It states:

> (e) The claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval. The following procedures apply to a proposed settlement, voluntary dismissal, or compromise:
>
> (1) *Notice to the Class*.
>
>> (A) *Information That Parties Must Provide to the Court*. The parties must provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.
>>
>> (B) *Grounds for a Decision to Give Notice*. The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to:
>>
>>> (i) approve the proposal under Rule 23(e)(2); and
>>>
>>> (ii) certify the class for purposes of judgment on the proposal.
>
> (2) *Approval of the Proposal*. If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
>> (A) the class representatives and class counsel have adequately represented the class;
>>
>> (B) the proposal was negotiated at arm's length;
>>
>> (C) the relief provided for the class is adequate, taking into account:
>>
>>> (i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e).[1]

In addition, where, as here, the Court has not already certified a class, the Court must determine whether the proposed settlement class satisfies the requirements of Rule 23. *Amchem v. Windsor,* 521 U.S. 591, 620–22 (1997). At the preliminary approval stage, the Court may conditionally certify the class for purposes of providing notice. *Manual for Complex Litigation,* § 21.632 (4th ed. 2004) ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b).").

---

[1] In *Girsh v. Jepson*, the Third Circuit articulated nine factors for district courts to consider in deciding whether a class-action settlement is fair and reasonable:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

521 F.2d 153, 157 (3d Cir. 1975) (alterations omitted) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974)). The *Girsh* factors predate the recent revisions to Rule 23, which now explicitly identifies the factors that courts should apply in scrutinizing proposed class settlements, and the discussion in *Girsh* substantially overlaps with the factors identified in Rule 23.

Accordingly, at this stage, the Court must determine whether the proposed class should be conditionally certified, leaving the final certification decision for the subsequent fairness hearing.

Rule 23(a) requires that the parties moving for class certification demonstrate the following:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Even if the requirements of Rule 23(a) are met, the parties must also show that the action can be maintained under at least one of the subsections of Rule 23(b).[2]

## DISCUSSION

For the reasons outlined in this Memorandum, the Court concludes that an initial presumption of fairness has been established in this case and the parties' settlement should be preliminarily approved. The Court also concludes that certification of the class is appropriate under Rule 23. Finally, the Court accepts the parties' recommendation and request for appointment of interim class counsel.

---

[2] As proposed class counsel here acknowledges, Rule 23 governs class action settlements, *not* FLSA collective actions. FLSA collective actions are approved on the basis of "fairness." *See Cuttic v. Crozer-Chester Med. Ctr.*, 868 F. Supp. 2d 464, 466 (E.D. Pa. 2012) ("When parties present to the district court a proposed settlement, the district court may enter a stipulated judgment if it determines that the compromise reached is a fair and reasonable resolution of a bona fide dispute over FLSA provisions rather than a mere waiver of statutory rights brought about by an employer's overreaching.") (citation and quotation omitted). Here, proposed class counsel recommends applying the two-step Rule 23 approval process to all settlement participants, which they submit provides "an extra layer of due process" to the FLSA collective action claimants and still comports with fairness. *See, e.g., Williams v. Aramark Sports, LLC*, No. 10-1044, 2011 WL 4018205, at *9 (E.D. Pa. Sept. 9, 2011) (approving FLSA collective action "[f]or essentially the same reasons the Court found that the Rule 23 requirements were met").

## I. Preliminary Approval of Settlement Agreement

There are three groups of settling plaintiffs:

First, there are 47 plaintiffs who worked for Accolade in Pennsylvania and opted into the FLSA collective action. These are the "**Pennsylvania Opt-Ins**." Forty-five (45) of the Pennsylvania Opt-Ins are *also* members of the PMWA class, because they worked in Pennsylvania between August 1, 2014 and November 26, 2016 *and* were misclassified as overtime-exempt. The remaining two Pennsylvania Opt-Ins were only underpaid for hours worked after November 26, 2016, and so they are not PMWA class members.

Second, there are 260 individuals who worked for Accolade in Pennsylvania and *did not* opt into the FLSA collective action, but who nonetheless worked between August 1, 2014 and November 26, 2016 and were misclassified as overtime-exempt. Because these Health Assistants did not join the collective action, their claims arise entirely under the PMWA for misclassification. These are the "**Non-Opt-In Class Members**."

Third, and finally, there are 16 plaintiffs who worked for Accolade in Arizona, were misclassified as overtime-exempt and/or underpaid for hours worked after November 26, 2016, and opted-into the FLSA collective action. These are the "**Arizona Opt-Ins**."[3]

### A. Rule 23(e)(2) Factors for "Approval of the Proposal"

#### i. Whether the Class Representatives and Counsel Adequately Represented the Class

This factor focuses "on the actual performance of counsel acting on behalf of the class." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018); *see also In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 439 (3d Cir. 2016) (class counsel should "develop[]

---

[3] Because these Health Assistants are not Pennsylvanians, they are not eligible to join the PMWA class.

enough information about the case to appreciate sufficiently the value of the claims"). According to proposed class counsel, they have already exhausted considerable time and effort on this case, including (1) logging hundreds of attorney hours on this litigation, (2) taking depositions, (3) requesting and reviewing written and electronic discovery, (4) constructing a damages model, and (5) interviewing 55 class members. *See* Mot. for Prelim. Approval at p. 14. Furthermore, during each conference concerning the proposed settlement agreement as well as during oral argument on the motion for preliminary approval, counsel was attentive to the Court's stated concerns about certain portions of the agreement, in each instance addressing those concerns with revisions to the settlement agreement and/or proposed notices. This factor weighs in favor of preliminarily approving the settlement agreement.

### ii. Whether the Proposal Was Negotiated at Arm's Length

The parties here agreed to settle the case after several conferences with a magistrate judge. "[T]he participation of an independent mediator in settlement negotiations virtually [e]nsures that the negotiations were conducted at arm's length and without collusion between the parties." *Bellum v. Law Offices of Frederic I. Weinberg & Assocs., P.C.*, No. 15-2460, 2016 WL 4766079, at *6 (E.D. Pa. Sept. 13, 2016) (citation and quotation omitted). This factor weighs in favor of preliminarily approving the settlement agreement.

### iii. Whether the Relief Provided for the Class is Adequate

#### 1. Does the Relief Account for the Costs, Risks, and Delay of Trial

According to the Advisory Committee Notes, this factor balances the "relief that the settlement is expected to provide to class members" against "the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). The Notes also state that this analysis "cannot be done with arithmetic accuracy, but it can provide a benchmark for comparison with the settlement figure." *Id.*

Proposed class counsel asserts that here, absent settlement, the parties would likely have incurred significant additional costs, including motion practice regarding (1) certifying the FLSA collective action, (2) certifying the Rule 23 class action, and (3) summary judgment. Mot. for Prelim. Approval at p. 15. Counsel also states that although Ms. Hall already constructed a damages model using an expert witness, she would likely have hired an additional damages expert for presentation purposes. *Id.* at 15–16. Finally, counsel explains at length the parties' litigation risks, including (1) risks created by the FLSA's multiple statutes of limitations (depending on establishing whether Accolade acted "willfully"), (2) whether the unpaid hours claim is cognizable, because it requires establishing that logging into a computer is compensable time, (3) whether the misrepresentation claim is cognizable, because there is an argument that the administrative exemption to overtime could have applied to Health Assistants prior to 2016, and (4) that the overtime hours actually worked by many class members could be less than the *pro rata* distribution available to settlement participants. *Id.* at 7–11.

### 2. Whether the Settlement Provides for an Effective Proposed Method of Distributing Relief

Under this factor, the Court "scrutinize[s] the method of claims processing to ensure that it facilitates filing legitimate claims" and "should be alert to whether the claims process is unduly demanding." Fed. R. Civ. P. 23 Advisory Committee Notes (Dec. 1, 2018). The settlement agreement provides for individualized notices to each class member, and it also provides that any class member who has not already opted-in to the FLSA collective *does not affirmatively need to take any action* to receive payment. In other words, unless PMWA class members explicitly ask to be excluded, they will be paid so long as they can be located by the Settlement Administrator. The notices also allow for settlement participants to raise objections to, and opt-out from, the settlement if they so choose.

### 3. The Terms of Proposed Attorneys' Fees

Here, the proposed attorneys' fees are $363,000 out of a total settlement amount of $1,100,000. This equals a 33% attorneys' fees award. Although the attorneys here did not conduct a full analysis of the factors identified by the Third Circuit Court of Appeals for assessing attorneys' fees awards,[4] they do note that this Court has previously commented that "the average attorney's fees percentage in [surveyed class action] cases was 31.71% and that the median fee award was 33.3%." *Aramark Sports, LLC,* 2011 WL 4018205, at *10 (citing *Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009)).

Collectively, the various conventional approaches under this factor weigh in favor of preliminarily approving the settlement agreement.

### iv. Whether the Proposal Treats Class Members Equitably Relative to Each Other

The FLSA collective action and the PMWA class action pay out at slightly different rates based on (1) whether plaintiffs are or are not members of both the class and collective, and (2) whether plaintiffs are based in Arizona or Pennsylvania. However, proposed class counsel has provided adequate support for the considerations behind these distinctions, which are driven by the risks inherent in each claim and the relative strength of each claim. *See supra* at p. 8; Mot. for

---

[4] Those factors include, "(1) the amount of the value created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; (7) the awards in similar cases; (8) the value of benefits attributable to the efforts of class counsel relative to the efforts of other groups; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee arrangement at the time counsel was retained; and (10) any innovative terms of settlement." *In re Diet Drugs Product Liability Litigation*, 582 F.3d 524, 541 (3d Cir. 2009).

Prelim. Approval at pp. 7–11. This factor weighs in favor of preliminarily approving the settlement agreement.

### B. *Rule 23(e)(1) Factors for "Notice to the Class"*

Rule 23 also states that in approving class settlements, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Such notice can be effectuated through "United States mail, electronic means, or other appropriate means." Fed. R. Civ. P. 23(c)(2)(B). Also, any notice,

> "must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)."

*Id.*

Here, the parties have agreed upon three separate notices, one for the Pennsylvania Opt-Ins, one for the Non-Opt-In Class Members, and one for the Arizona Opt-Ins. Each notice states the nature of the action, all of the claims involved, and defines the class and collective for *every* group of plaintiffs. Each notice also clearly states the claim(s) for which the recipient of the notice is recovering. *See e.g.*, Arizona Opt-In Notice (Amended Ex. B) (Doc. No. 89) ("The overtime 'misclassification' claim described in the above paragraph applies to you, **[*Insert Name*]**, because you worked as an HA prior to November 26, 2016. **OR** The overtime 'misclassification' claim described in the above paragraph does *not* apply to you, **[*Insert Name*]**, because you did not work as an HA prior to November 26, 2016.").

The notices also clearly identify other important and necessary details. Each notice states that Health Assistants can make objections through an attorney, sets forth the procedure for Health

10

Assistants to exclude themselves from the settlement, and describes the effects of class judgment. The notice forms also explain that the Settlement Administrator will individualize each notice to specifically identify the settlement amount to which the particular recipient is entitled. Furthermore, during oral argument on the motion for preliminary approval, the Court stated its concern that the proposed notices did not include language about *prospective* claims being released by the settlement agreement for which settlement participants were not recovering. In revised notices submitted to the Court after oral argument, the parties added language addressing the Court's comments.[5]

All of the Rule 23(e) factors weigh in favor of preliminary approval of the settlement agreement.

**II.     Whether the Court Will Likely Be Able to Certify the Class**

Under Rule 23(a), the four prerequisites for class certification that courts consider are numerosity, commonality, typicality, and adequacy of representation. Rule 23(b) also requires that class actions fall within one of three "types"; here, proposed class counsel asserts that "questions of law or fact common to class members predominate[.]" *See* Fed. R. Civ. P. 23(b)(3).

---

[5]     Each notice now includes the following disclaimer:

> "Please note, the Complaint that was filed in this case on behalf of Gwendolyn Hall and other HAs *only* asserted claims against Accolade under the Fair Labor Standards Act and the Pennsylvania Minimum Wage Act. This lawsuit did not assert violations of the Pennsylvania Wage Payment and Collection Law, the Arizona Wage Law, or any other federal, state, or local statute, regulation, ordinance, or common law theory seeking unpaid wages. Should you stay in the settlement, you will still be releasing any potential claims you may have against Accolade under these laws that arise prior to [*Insert Final Approval Date*]. However, you will not be receiving any additional settlement money outside of what is listed in Section 4 above in return for releasing these potential claims."

*See*, *e.g.*, Arizona Opt-In Notice (Amended Ex. B) (Doc. No. 89).

11

Proposed class-counsel analyzes the Rule 23(a) and (b) factors with regard to the PMWA class action plaintiffs, but *not* the FLSA collective action plaintiffs – because those plaintiffs are the only ones alleging a Rule 23 class action.

### A. *Numerosity*

There are 305 total PMWA class action plaintiffs (260 Non-Opt-In Class Members and 45 Pennsylvania Opt-Ins). "Classes in excess of one hundred members are typically found to satisfy the numerosity requirement." *Rendler v. Gambone Bros. Dev. Co.*, 182 F.R.D. 152, 157 (E.D. Pa. 1998) (citing *Weiss v. York Hospital*, 745 F.2d 786, 808 n.35 (3d Cir. 1984)). The numerosity requirement is met here.

### B. *Commonality*

The commonality bar "is not a high one," *Rodriguez v. National City Bank*, 726 F.3d 372, 382 (3d Cir. 2013), and "[b]ecause the requirement may be satisfied by a single common issue, it is easily met[.]" *Baby Neal v. Casey*, 43 F.3d 48, 56 (3d Cir. 1994) (citation omitted). Here, Accolade classified every single class member as overtime-exempt between August 1, 2014 and November 26, 2016. This creates a common legal issue: whether the exemption was proper under the PMWA.

### C. *Typicality*

"The typicality inquiry is intended to assess whether the action can be efficiently maintained as a class and whether the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentees' interests will be fairly represented." *Id.* at 57. Courts look to whether "the named plaintiff's individual circumstances are markedly different or the legal theory upon which the claims are based differs from that upon which the claims of other class members will perforce be based. . . . [C]ases challenging the same unlawful

conduct which affects both the named plaintiffs and the putative class usually satisfy the typicality requirement." *Id.* at 57–58 (quotations and citations omitted).

Here, the circumstances, underlying legal questions, and unlawful legal conduct are the same for all class members: all turn on whether the Health Assistants were misclassified as exempt from overtime pay.

### D. Adequacy of Representation

This requirement "has two components": "[f]irst, the adequacy inquiry tests the qualifications of the counsel to represent the class"; and, "[s]econd, it seeks to uncover conflicts of interest between named parties and the class they seek to represent." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 532 (citations and quotations omitted).

Here, counsel has spent extensive time and resources in representing the class. *See supra* pp. 6–7. Further, as evidenced by the typicality and commonality considerations discussed above, the interests of the named plaintiff representative and the class members appear aligned. Finally, counsel is experienced in this type of litigation, and there are no apparent conflicts of interest. Counsel and the named plaintiffs have adequately represented the interests of the class.

### E. Predominance of Issues

Two predominance issues are relevant here.

First:

> "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members."

*Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citations and quotations omitted).

As with typicality and commonality, one issue is central to all class members: whether Accolade misclassified Health Assistants as overtime exempt. Indeed, the Court has found predominance in overtime lawsuits challenging common classifications of employees as overtime-exempt under white-collar exemptions. *See*, *e.g.*, *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 WL 2137224, at *5 (E.D. Pa. July 16, 2009) (in case concerning overtime exemptions, holding that "Plaintiffs have alleged such a common course of conduct here, based on Defendant's employment policies, [that] the Court finds that the predominance requirement is satisfied").

Second, the predominance inquiry also requires a balancing of the merits of pursuing a class action against the merits of allowing class members to pursue their claims individually. This "superiority inquiry" looks at several factors:

> "'(A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.'"

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 315 & n.56 (3d Cir. 1998) (quoting Fed. R. Civ. P. 23(b)(3)).

All of these factors appear to be satisfied here. No relevant previous litigation exists, all of the class members are Pennsylvania residents so this forum is appropriate, and settlement mitigates any difficulties in the management of the action. There are also not any evident interests counseling in favor of individual control.

The Court is satisfied that all of the Rule 23 factors favor class certification.

**III.     Appointment of Interim Class Counsel**

Finally, under Fed. R. Civ. P. 23(g)(3), two the law firms representing Ms. Hall, Winebrake & Santillo, LLC and Hardwick Benfer, LLC, propose that they both be appointed as interim class counsel.  Both submit that they have substantial experience in employment cases, and both have conducted themselves professionally throughout the proceedings thus far.  Winebrake & Santillo, LLC also has substantial experience in wage claim class actions.  Consequently, the Court finds no impediment to appointing both law firms as interim class counsel.

## CONCLUSION

For the foregoing reasons, the Court will grant the Motion for Preliminary Approval in this matter.  An appropriate Order, with attendant time requisites, follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE