IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| GWENDOLYN HALL, *et al.*, | : | |
| | : | |
| Plaintiffs, | : | 2:17-cv-03423-GEKP |
| v. | : | |
| ACCOLADE, INC., | : | |
| Defendant | : | |
| | : | |

## CLASS/COLLECTIVE ACTION SETTLEMENT AGREEMENT

The Parties (defined below) hereby **STIPULATE** and **AGREE** that the Action (defined below) is settled pursuant to the following terms and conditions and subject to judicial approval:

1. **Definitions**.  The following defined terms appear throughout this document in ALL CAPS and have the following meanings:

**ACTION** means the above-captioned litigation.

**ADMINISTRATOR** means Settlement Services, Inc., 2032-D Thomasville Road, Tallassee, FL 32308.

**AGREEMENT** means this Class/Collective Action Settlement Agreement.

**COURT** means the United States District Court for the Eastern District of Pennsylvania.

**COVERED EMPLOYEES** means the 323 individuals covered by this settlement.  These individuals fall into the following three categories:

- **ARIZONA OPT-INS**: The 16 individuals who (i) have joined the conditionally certified FLSA collective[1] and (ii) were employed by

---

[1]  On November 14, 2017, the COURT conditionally certified a Fair Labor Standards Act collective defined as "[a]ll individuals who, during any time within the past three years, were employed by Defendants as Health Assistants" and approved the proposed notice and opt-in forms and procedures. *See* Doc. 46 at ¶ 1.  Individuals joined the collective by filing "Consent to Join" forms with the COURT.

DEFENDANT as Health Assistants in Arizona.  These individuals are identified in Exhibit A with an "AOI" designation.

- **PENNSYLVANIA OPT-INS**: The 47 individuals who (i) have joined the conditionally certified FLSA collective and (ii) were employed by DEFENDANT as Health Assistants in Pennsylvania.  These individuals are identified in Exhibit A with an "POI" designation.

- **NON-OPT-IN CLASS MEMBERS**: The 260 individuals who (i) *have not* joined the conditionally certified FLSA collective and (ii) were employed by DEFENDANT as Health Assistants in Pennsylvania between August 1, 2014 and November 26, 2016.  These individuals are identified in Exhibit A with a "CM" designation.

**DEFENDANT** means Accolade, Inc. and all of its past, present, or future parents, subsidiaries, affiliates or related companies, successors, and predecessors, as well as their respective past, present, and future owners, officers, directors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, and insurers.

**DEFENSE COUNSEL** means Pepper Hamilton, LLP.

**EFFECTIVE DATE** means (i) 35 calendar days after the COURT enters an order granting final approval of the SETTLEMENT and dismissing the ACTION or (ii) if final approval is appealed and upheld, 3 business days after all avenues for appellate review are exhausted.

**HALL** means Gwendolyn Hall.

**OPT-IN DATE** means, for each ARIZONA OPT-IN and PENNSYLVANIA OPT-IN, the date on which his/her completed "Consent to Join" form was filed with the COURT.

**OPT-IN LOOK-BACK DATE** means, for each ARIZONA OPT-IN and PENNSYLVANIA OPT-IN, the date falling three years prior to his/her OPT-IN DATE.

**PARTIES** means HALL and DEFENDANT.

**PAYMENT AMOUNT** means, for each COVERED EMPLOYEE, the amount listed in Exhibit A in the "Total Payment" column.  These amounts have been determined as follows:

- Each ARIZONA OPT-IN receives **(i)** $18.86 for each week employed as a Health Assistant during the period between his/her OPT-IN LOOK-BACK DATE and November 26, 2016 *plus* **(ii)** $30.00 for each week employed as a Health Assistant between November 27, 2016 and December 29, 2018.

- Each PENNSYLVANIA OPT-IN receives **(i)** $28.28 for each week employed as a Health Assistant during the period between August 1, 2014 and his/her OPT-IN LOOK-BACK DATE *plus* **(ii)** $37.74 for each week employed as a Health Assistant between his/her OPT-IN LOOK-BACK DATE and November 26, 2016 *plus* **(iii)** $30.00 for each week employed as a Health Assistant between November 27, 2016 and December 29, 2018.

- Each NON-OPT-IN CLASS MEMBER receives $28.28 for each week employed as a Health Assistant between August 1, 2014 and November 26, 2016.

**PLAINTIFFS' COUNSEL** means Winebrake & Santillo, LLC and Hardwick Benfer, LLC.

**PRELIMINARY APPROVAL DATE** means the date on which the COURT enters the anticipated order certifying the class/collective for settlement purposes and preliminarily approving the SETTLEMENT.

**RELEASED CLAIMS** means all claims arising between August 1, 2014 and the FINAL APPROVAL DATE asserted in or related to the ACTION, including, but not limited to, all such claims seeking unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*, the Arizona Wage Law, Ariz. Rev. Stat. §§ 23-350, *et seq.*, or any other federal, state, or local statute, regulation, ordinance, or common law theory seeking unpaid wages or any associated penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

**RELEASED PARTIES** means DEFENDANT and its past, present, or future parents, subsidiaries, affiliates or related companies, successors, and predecessors, as well as their respective past, present, and future owners, officers, directors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, attorneys, and insurers.

**SETTLEMENT** means the terms, conditions, and obligations described in this AGREEMENT.

2.      **Conditions Precedent**.  This SETTLEMENT is conditioned on passage of the EFFECTIVE DATE.

3.      **Failure to Obtain Court Approval.**  If the SETTLEMENT is not approved by the COURT, it will be null and void, and all PARTIES will return to the *status quo ante*.  During the remainder of the litigation, the PARTIES will be prohibited from relying on any negotiations, papers, or orders (including any class/collective certification order) pertaining to or resulting from the SETTLEMENT.

4.      **Maximum Settlement Amount**.  DEFENDANT's maximum payment under this SETTLEMENT is $1,100,000.00, inclusive of attorneys' fees, administrative and other costs and expenses, and service awards.  Any requirement that DEFENDANT pay more than this Maximum Settlement Amount constitutes a material change to this AGREEMENT and justifies DEFENDANT's unilateral termination of this AGREEMENT and withdrawal from the SETTLEMENT.

5.      **Release**.  Upon passage of the EFFECTIVE DATE, each COVERED EMPLOYEE who has not excluded himself/herself from the SETTLEMENT (on behalf of themselves and their past, present and future agents, successors, heirs, spouses, administrators, executors, partners, assigns, representatives, or predecessors) releases and forever discharges the RELEASED PARTIES from the RELEASED CLAIMS.

6.      **Notice of the Settlement.**  PLAINTIFFS' COUNSEL and DEFENSE COUSEL will work cooperatively to create an Excel spreadsheet listing the last known

residential address of all COVERED EMPLOYEES.  This list will be finalized and provided to the ADMINISTRATOR within 14 calendar days after the execution of this AGREEMENT.  On or before 7 calendar days after the PRELIMINARY APPROVAL DATE, the ADMINISTRATOR will: (i) mail the Notice Form attached as Exhibit B to each of the 16 ARIZONA OPT-INS; (ii) mail the Notice Form attached as Exhibit C to each of the 47 PENNSYLVANIA OPT-INS; and (iii) mail the Notice Form attached as Exhibit D to each of the 260 NON-OPT-IN CLASS MEMBERS.  If the Postal Service returns any Notice Form to the ADMINISTRATOR with a forwarding address, the ADMINISTRATOR will promptly re-mail the Notice Form to the forwarding address.  If the Postal Service returns any Notice Form to the ADMINISTRATOR without a forwarding address, the ADMINISTRATOR will work diligently to obtain an updated address and will promptly mail the Notice Form to any updated address.  The ADMINISTRATOR will prepare a sworn declaration describing the notice process. PLAINTIFFS' COUNSEL will file this declaration with the COURT along with any other papers seeking final approval of the SETTLEMENT.

7. **Exclusions from the Settlement.**  Any COVERED EMPLOYEE desiring to exclude himself/herself from the SETTLEMENT must do so in writing.  Exclusion requests must be mailed to the ADMINISTRATOR pursuant to the instructions in the Notice Form and must be postmarked by the date falling 63 calendar days after the PRELIMINARY APPROVAL DATE.  All exclusion requests will be attached to the declaration described in paragraph 6 above.

8. **Objections to the Settlement.**  Any COVERED EMPLOYEE desiring to object to the SETTLEMENT must do so in writing.  Objections must be mailed to the ADMINISTRATOR pursuant to the instructions in the Notice Form and must be postmarked by the date falling 63 calendar days after the PRELIMINARY APPROVAL DATE.  All such objections will be attached to the declaration described in paragraph 6 above.

9.        **Payments to Settlement Participants**.  On or before 7 calendar days after the FINAL APPROVAL DATE, DEFENDANT will transfer to the ADMINISTRATOR a payment in the amount of $1,100,000.00 *minus* any PAYMENT AMOUNTS attributable to any COVERED EMPLOYEES who exclude themselves from the SETTLEMENT.  On or before 21 calendar days after the FINAL APPROVAL DATE, the ADMINISTRATOR will issue to each Settlement Participant a payroll check representing his/her Payment Amount from which the Administrator will deduct all applicable taxes and other withholdings (including, *inter alia*, both the employer's and the employee's portion of FICA, SUTA, and FUTA) and for which the ADMINISTRATOR will issue an IRS W-2 Form.[2]  The ADMINISTRATOR will mail these checks and tax forms to the best known address for each Settlement Participant.  If the postal service returns any checks to the ADMINISTRATOR with a forwarding address, the ADMINISTRATOR will promptly re-mail the checks to the forwarding address.  If the postal service returns any checks to the ADMINISTRATOR without a forwarding address, the Administrator will work diligently to obtain an updated address and will promptly re-mail the checks to any updated address.  All settlement checks will bear an expiration date falling 150 calendar days after the FINAL APPROVAL DATE.  If the funds associated with checks not cashed by the expiration date exceed 5% of the total payments made to all SETTLEMENT PARTICIPANTS, then the ADMINISTRATOR will redistribute on a *pro rata basis* such funds to those SETTLEMENT PARTICIPANTS who have cashed their settlement checks.  If the funds associated with checks not cashed by the expiration date do not exceed 5% of the total payments made to all SETTLEMENT PARTICIPANTS, then the ADMINISTRATOR will donate such funds to the Pennsylvania IOLTA Board.

---

[2]  To facilitate the issuance of payroll checks and the reporting of taxes associated with the settlement payments, DEFENDANT will provide to the ADMINISTRATOR (but not to PLAINTIFFS' COUNSEL) the social security number of each COVERED EMPLOYEE pursuant to a confidentiality agreement to be prepared by Defense Counsel.

10.    **Payment to Plaintiffs' Counsel**.  PLAINTIFFS' COUNSEL will request that the COURT approve the payment to PLAINTIFFS' COUNSEL of $363,000.00 in combined fees, costs, and expenses (including all fees and expenses paid to the ADMINISTRATOR).  The ADMINISTRATOR will pay any court-approved fees, costs, and expenses on or before 21 calendar days after the FINAL APPROVAL DATE and will issue to PLAINTIFFS' COUNSEL an IRS 1099 Forms reflecting this payment.  The SETTLEMENT is not contingent on the COURT's approval of this requested amount, and any disapproved monies will be distributed on a *pro rata* basis to the COVERED EMPLOYEES who do not exclude themselves from the SETTLEMENT.

11.    **Service Awards.**  PLAINTIFFS' COUNSEL will request that the COURT approve a $10,000.00 service award to HALL and $1,000.00 service awards to JaCarla Royall and Denise Belcher.  The ADMINISTRATOR will pay any court-approved service award on or before 21 calendar days after the FINAL APPROVAL DATE and will ensure that such payments are reflected in each recipient's IRS 1099 Form.   The SETTLEMENT is not contingent on the COURT's approval of this requested amount, and any disapproved monies will be distributed on a *pro rata* basis to the COVERED EMPLOYEES who do not exclude themselves from the SETTLEMENT.

12.    **Dismissal with Prejudice**.  Upon final approval of this AGREEMENT by the COURT, the ACTION will be dismissed with prejudice in its entirety.  The PARTIES will request that the COURT retain jurisdiction to enforce this AGREEMENT.

13.    **No Representations**.  In entering into this SETTLEMENT, no PARTY relies on any statements, representations, or promises not described in this AGREEMENT.

14.    **Consent**.  Each PARTY has carefully read and understands this AGREEMENT and has received independent legal advice with respect to the AGREEMENT.

15.     **Successors**.  This AGREEMENT will inure to the benefit of and be binding upon each PARTY's heirs, successors, and assigns.

16.     **No Assignments**.  No PARTY has assigned or transferred, or purported to assign or transfer, to any other person or entity any rights or interests pertaining to the ACTION or SETTLEMENT.

17.     **No Presumptions.**  In interpreting this AGREEMENT, there will not be any presumption of interpretation against any PARTY.

18.     **No Admissions and No Prevailing Party**.  This AGREEMENT is the result of a compromise between the PARTIES for the sole purpose of resolving this matter and avoiding the time and expense of further litigation.  Nothing in this AGREEMENT constitutes an admission of liability or the propriety of class certification by any RELEASED PARTY with regard to the subject matter of the ACTION.  Nothing herein may be construed or used as an admission or as evidence of the validity of any claim against any RELEASED PARTY.

19.     **Tax Liability**.  DEFENDANT, RELEASED PARTIES, DEFENSE COUNSEL, and PLAINTIFFS' COUNSEL make no representations as to the tax treatment or legal effect of the payments called for under this AGREEMENT.  HALL, PLAINTIFFS' COUNSEL, and all COVERED EMPLOYEES who do not exclude themselves from the SETTLEMENT will be solely responsible for the payment of any taxes and penalties assessed on the payments described in this AGREEMENT.

20.     **Duty to Defend**.  The PARTIES will support the AGREEMENT's approval and enforcement, and will defend the AGREEMENT from any legal challenge.

21.     **Publicity/Media**.  PLAINTIFFS' COUNSEL will not disclose the terms of the SETTLEMENT to the media, the press, on any website, or generally to the public. If PLAINTIFFS' COUNSEL receive any inquiries from the media, they will state that the ACTION has been resolved on the terms described in publicly filed documents.  If

PLAINTIFFS' COUNSEL are legally required to communicate about the settlement with governmental authorities, they will immediately notify DEFENSE COUNSEL.

22. **Warranty of Authority.** Each signatory below warrants and represents that he/she is competent and authorized to enter into this AGREEMENT on behalf of the PARTY for whom he/she purports to sign.

23. **Evidentiary Privilege.** This AGREEMENT falls within the protection afforded compromises and offers to compromise under Federal Rule of Evidence 408 and Pennsylvania Rule of Evidence 408.

24. **Applicable Law.** This AGREEMENT will be governed, enforced, and interpreted according to Pennsylvania law.

25. **Execution.** This AGREEMENT may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated: 3-5-2019          Gwendolyn Hall
                         Gwendolyn Hall

Dated: 2/26/19
                         For Winebrake & Santillo, LLC

Dated: 2/26/19
                         For Hardwick Benfer, LLC

Dated: _____
                         For Lee & Braziel, LLP

Dated: _____
                         For Accolade, Inc.

9

PLAINTIFFS' COUNSEL are legally required to communicate about the settlement with governmental authorities, they will immediately notify DEFENSE COUNSEL.

22.     **Warranty of Authority.**  Each signatory below warrants and represents that he/she is competent and authorized to enter into this AGREEMENT on behalf of the PARTY for whom he/she purports to sign.

23.     **Evidentiary Privilege.**  This AGREEMENT falls within the protection afforded compromises and offers to compromise under Federal Rule of Evidence 408 and Pennsylvania Rule of Evidence 408.

24.     **Applicable Law.**  This AGREEMENT will be governed, enforced, and interpreted according to Pennsylvania law.

25.     **Execution.**  This AGREEMENT may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

**IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated: _____

Dated: __2/26/19__                            _____
                                              Gwendolyn Hall

                                              _____
                                              For Winebrake & Santillo, LLC

Dated: __2/26/19__                            _____
                                              For Hardwick Benfer, LLC

Dated: __3/6/19__                             _____
                                              For Lee & Braziel, LLP

Dated: _____                      _____
                                              For Accolade, Inc.

PLAINTIFFS' COUNSEL are legally required to communicate about the settlement with governmental authorities, they will immediately notify DEFENSE COUNSEL.

22.     **Warranty of Authority.**  Each signatory below warrants and represents that he/she is competent and authorized to enter into this AGREEMENT on behalf of the PARTY for whom he/she purports to sign.

23.     **Evidentiary Privilege.**  This AGREEMENT falls within the protection afforded compromises and offers to compromise under Federal Rule of Evidence 408 and Pennsylvania Rule of Evidence 408.

24.     **Applicable Law.**  This AGREEMENT will be governed, enforced, and interpreted according to Pennsylvania law.

25.     **Execution.**  This AGREEMENT may be executed in counterparts, each of which will be deemed an original, but all of which taken together will constitute one and the same instrument.

     **IN WITNESS WHEREOF**, and intending to be legally bound, the Parties hereby execute this Agreement on the dates indicated below:

Dated: _____      _____
                             Gwendolyn Hall


Dated: _____      _____
                             For Winebrake & Santillo, LLC


Dated: _____      _____
                             For Hardwick Benfer, LLC


Dated: _____      _____
                             For Lee & Braziel, LLP


Dated: March 1, 2019         _____
                             For Accolade, Inc.

# Exhibit A

**Exhibit A**

| First Name | Last Name | Type | Opt-in Look-Back Date | CM Weeks Between 8/1/14 and 11/26/16 | AOI Weeks Between Opt-in Look-Back Date and 11/26/16 | POI Weeks Between 8/1/14 and Opt-in Look-Back Date | POI Weeks Between Opt-in Look-Back Date and 11/26/16 | AOI and POI Weeks Between 11/27/16 and 12/29/18 | CM Weeks Between 8/1/14 and 11/26/16 Multiplied by $28.28/week | AOI Weeks Between Opt-in Look-Back Date and 11/26/16 Multiplied by $18.86/week | POI Weeks Between 8/1/14 and Opt-in Look-Back Date Multiplied by $28.28/week | POI Weeks Between Opt-in Look-Back Date and 11/26/16 Multiplied by $37.74/week | AOI and POI Weeks Between 11/27/16 and 12/29/18 Multiplied by $30.00/week | Total Individual Gross Payment Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Kaima | Akbar | POI | 8/14/2014 | | | | 58.71 | 7.29 | | | | $2,214.25 | $218.57 | $2,432.83 |
| Folasade | Akinlemibola | POI | 12/11/2014 | | | | | 19.29 | | | | | $578.57 | $578.57 |
| Karen | Alkire | POI | 8/7/2014 | | | 0.86 | 73.14 | | | | $24.24 | $2,758.39 | | $2,782.63 |
| Denise | Belcher | POI | 10/27/2014 | | | 12.43 | 7.57 | | | | $351.53 | $285.54 | | $637.07 |
| Taylor Kristine | Bugg | POI | 12/11/2014 | | | 18.86 | 81.14 | | | | $533.36 | $3,060.09 | | $3,593.45 |
| Dana | Caggiano | POI | 10/27/2014 | | | 12.43 | 40.14 | | | | $351.53 | $1,513.88 | | $1,865.41 |
| Mia C. | Carson | POI | 8/7/2014 | | | 0.86 | 120.29 | 79.29 | | | $24.24 | $4,536.26 | $2,378.57 | $6,939.07 |
| Dia | Cleveland | POI | 10/27/2014 | | | 12.43 | 26.43 | | | | $351.53 | $996.68 | | $1,348.22 |
| Jonathon | Cloyd | POI | 9/14/2014 | | | | 72.57 | 43.29 | | | | $2,736.84 | $1,298.57 | $4,035.41 |
| Lawanda | Connelly | POI | 8/4/2014 | | | 0.43 | 120.71 | 25.71 | | | $12.12 | $4,552.42 | $771.43 | $5,335.97 |
| Daniel | Crevak | POI | 1/18/2015 | | | | 28.71 | 10.43 | | | | $1,082.88 | $312.86 | $1,395.74 |
| Amira | Edwards | POI | 8/23/2014 | | | 3.14 | 118.00 | | | | $88.89 | $4,450.06 | | $4,538.95 |
| Susan | Founds | POI | 12/21/2014 | | | | | 19.29 | | | | | $578.57 | $578.57 |
| Tashica | Fulton-Green | POI | 11/21/2014 | | | 16.00 | 105.14 | 28.71 | | | $452.55 | $3,965.19 | $861.43 | $5,279.16 |
| Ashly | Galanti | POI | 1/8/2015 | | | 22.86 | 88.00 | | | | $646.50 | $3,318.69 | $0.00 | $3,965.19 |
| Cheri | Geyer | POI | 12/11/2014 | | | 18.86 | 102.29 | 109.00 | | | $533.36 | $3,857.44 | $3,270.00 | $7,660.80 |
| Luis | Gonzalez | POI | 1/17/2015 | | | 24.14 | 97.00 | 9.29 | | | $682.86 | $3,658.10 | $1,255.71 | $5,596.68 |
| Laurie | Halbe | POI | 1/17/2015 | | | 0.00 | 43.71 | | | | | $1,648.57 | $278.57 | $1,927.14 |
| Gwendolyn | Hall | POI | 8/4/2014 | | | 0.43 | 120.71 | 11.57 | | | $12.12 | $4,552.42 | $347.14 | $4,911.69 |
| Courtney | Harmon | POI | 10/27/2014 | | | 12.43 | 7.43 | | | | $351.53 | $280.15 | | $631.68 |
| Elizabeth | Henry | POI | 8/4/2014 | | | 0.43 | 110.43 | | | | $12.12 | $4,164.52 | | $4,176.64 |
| Ruth | Humm | POI | 12/14/2014 | | | | 43.71 | 91.29 | | | | $1,648.57 | $2,738.57 | $4,387.14 |
| Tanikia | James | POI | 1/19/2015 | | | 24.43 | 96.71 | 109.00 | | | $690.94 | $3,647.32 | $3,270.00 | $7,608.27 |
| Ashley | Johnson | POI | 8/14/2014 | | | 1.86 | 111.00 | | | | $52.53 | $4,186.07 | | $4,238.60 |
| Rosaria Linda | Kazel | POI | 12/11/2014 | | | | 9.00 | | | | | $339.41 | | $339.41 |
| Jennifer | Kerr | POI | 8/8/2014 | | | 1.00 | 120.14 | 11.57 | | | $28.28 | $4,530.87 | $347.14 | $4,906.30 |
| Tisha | Khakazi | POI | 12/11/2014 | | | 18.86 | 102.29 | 11.57 | | | $533.36 | $3,857.44 | $347.14 | $4,737.94 |
| Lisa | Lobel | POI | 10/27/2014 | | | 12.43 | 4.14 | | | | $351.53 | $156.24 | | $507.77 |
| Natalie Scott | Mack | POI | 1/12/2015 | | | 23.43 | 97.71 | 77.57 | | | $662.66 | $3,685.04 | $2,327.14 | $6,674.84 |
| Tyrana | Mays | POI | 8/4/2014 | | | | 110.71 | 109.00 | | | | $4,175.30 | $3,270.00 | $7,445.30 |
| Erin | Meixelsperger | POI | 1/30/2015 | | | 26.00 | 95.14 | 109.00 | | | $735.39 | $3,588.06 | $3,270.00 | $7,593.45 |
| Jordan | Nejaime | POI | 1/2/2015 | | | 22.00 | 52.00 | | | | $622.25 | $1,961.04 | | $2,583.30 |
| Philip | Newell | POI | 12/11/2014 | | | 18.86 | 20.14 | | | | $533.36 | $759.63 | | $1,293.00 |
| Jose | Perez | POI | 1/10/2015 | | | 23.14 | 28.29 | | | | $654.58 | $1,066.72 | | $1,721.30 |
| Catherine | Robinson | POI | 9/6/2014 | | | 5.14 | 116.00 | 71.57 | | | $145.46 | $4,374.63 | $2,147.14 | $6,667.24 |
| Kelly | Rodney | POI | 12/11/2014 | | | | 43.71 | 35.29 | | | | $1,648.57 | $1,058.57 | $2,707.14 |
| Sara | Roe | POI | 8/18/2014 | | | 2.43 | 118.71 | 36.86 | | | $68.69 | $4,477.00 | $1,105.71 | $5,651.40 |
| Tanisha | Rogers | POI | 10/2/2014 | | | | 59.00 | | | | | $2,225.03 | | $2,225.03 |
| JaCarla | Royall | POI | 8/21/2014 | | | 2.86 | 118.29 | 109.00 | | | $80.81 | $4,460.83 | $3,270.00 | $7,811.65 |
| Toni | Royall | POI | 8/25/2014 | | | 3.43 | 49.14 | | | | $96.97 | $1,853.29 | | $1,950.27 |
| Clarissa | Singleton | POI | 8/4/2014 | | | 0.43 | 120.71 | 13.86 | | | $12.12 | $4,552.42 | $415.71 | $4,980.26 |
| Edward J. | Skibinski | POI | 8/8/2014 | | | 1.00 | 120.14 | 6.57 | | | $28.28 | $4,530.87 | $197.14 | $4,756.30 |
| Kathryn | Stewart | POI | 8/9/2014 | | | 1.14 | 17.29 | | | | $32.32 | $651.89 | | $684.21 |
| Mary | Taska (Dwyer) | POI | 8/9/2014 | | | 0.00 | 90.71 | 8.57 | | | | $3,421.05 | $257.14 | $3,678.19 |
| Alicia | Verleysen | POI | 10/4/2014 | | | 9.14 | 112.00 | 52.86 | | | $258.60 | $4,223.78 | $1,585.71 | $6,068.10 |
| Mary Paige | Welby | POI | 1/19/2015 | | | 24.43 | 19.57 | | | | $690.94 | $738.08 | | $1,429.03 |
| Sara | White | POI | 12/11/2014 | | | 18.86 | 91.86 | | | | $533.36 | $3,464.15 | | $3,997.51 |
| Mary | Acker | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Nick | Agnes | CM | | 15.71 | | | | | $444.47 | | | | | $444.47 |
| Angela | Aicher | CM | | 97.43 | | | | | $2,755.70 | | | | | $2,755.70 |
| Star | Altland | CM | | 99.86 | | | | | $2,824.39 | | | | | $2,824.39 |
| Dominique | Andrews | CM | | 58.00 | | | | | $1,640.49 | | | | | $1,640.49 |
| Janel | Angst | CM | | 8.00 | | | | | $226.27 | | | | | $226.27 |
| Nina | Armstrong | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Tina | Bacon | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Lanier | Bailey | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Alexandra | Bakerian | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Megan | Barilla | CM | | 59.57 | | | | | $1,684.93 | | | | | $1,684.93 |
| Jennifer | Barvitskie | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Cynthia | Baskin | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Lesley | Bates | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Ashley | Becker | CM | | 61.43 | | | | | $1,737.46 | | | | | $1,737.46 |

EXHIBIT A

| First Name | Last Name | Type | Opt-in Look-Back Date | CM Weeks Between 8/1/14 and 11/26/16 | AOI Weeks Between Opt-in Look-Back Date and 11/26/16 | POI Weeks Between 8/1/14 and Opt-in Look-Back Date | POI Weeks Between Opt-in Look-Back Date and 11/26/16 | AOI and POI Weeks Between 11/27/16 and 12/29/18 | CM Weeks Between 8/1/14 and 11/26/16 Multiplied by $28.28/week | AOI Weeks Between Opt-in Look-Back Date and 11/26/16 Multiplied by $18.86/week | POI Weeks Between Opt-in Look-Back Date Multiplied by $28.28/week | POI Weeks Between Opt-in Look-Back Date and 11/26/16 Multiplied by $37.74/week | AOI and POI Weeks Between 11/27/16 and 12/29/18 Multiplied by $30.00/week | Total Individual Gross Payment Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Keisha | Belcher | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Kelly | Bench | CM | | 24.14 | | | | | $682.86 | | | | | $682.86 |
| Antoinette | Bencivenne | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Julie | Bergman | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Heidi | Bershad | CM | | 33.57 | | | | | $949.54 | | | | | $949.54 |
| Kristi | Besse | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Brenda | Bickings | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Susan | Bilker | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Kysha | Binns | CM | | 6.57 | | | | | $185.87 | | | | | $185.87 |
| Lakisha | Blackwell | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Brooke | Blake | CM | | 75.00 | | | | | $2,121.32 | | | | | $2,121.32 |
| Amanda | Bonavenia | CM | | 29.43 | | | | | $832.37 | | | | | $832.37 |
| Faith | Borrell | CM | | 114.71 | | | | | $3,244.61 | | | | | $3,244.61 |
| Maura | Boughter-Dornfeld | CM | | 58.71 | | | | | $1,660.69 | | | | | $1,660.69 |
| Greg | Boyle | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Megan | Bradley | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Rose | Bridges | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Averie | Brittin | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Laura | Bryan | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Stephanie | Bucca | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Teresa | Camilari | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Whitney | Campoli | CM | | 4.14 | | | | | $117.18 | | | | | $117.18 |
| Sarah | Candido | CM | | 68.71 | | | | | $1,943.53 | | | | | $1,943.53 |
| Trina | Cashley | CM | | 19.29 | | | | | $545.48 | | | | | $545.48 |
| Sean | Cerny | CM | | 20.71 | | | | | $585.89 | | | | | $585.89 |
| Sarah | Choi | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Tori | Christie | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Cynthia | Clawson | CM | | 25.71 | | | | | $727.31 | | | | | $727.31 |
| Nicole | Colahan | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Letetia | Coleman | CM | | 68.71 | | | | | $1,943.53 | | | | | $1,943.53 |
| Rachel | Collins | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Celeste | Copeland | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Betty | Coutts | CM | | 24.43 | | | | | $690.94 | | | | | $690.94 |
| James | Cunningham | CM | | 61.43 | | | | | $1,737.46 | | | | | $1,737.46 |
| Michelle | Datsko | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Melissa | Davis | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Samantha | Defrank | CM | | 68.71 | | | | | $1,943.53 | | | | | $1,943.53 |
| Lauren | Dicair | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Aja | DiFelice | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Charlene | Dillman | CM | | 68.71 | | | | | $1,943.53 | | | | | $1,943.53 |
| Shakirah | Duckett | CM | | 58.71 | | | | | $1,660.69 | | | | | $1,660.69 |
| Adam | Dytko | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Amira | Edwards | CM | | 118.43 | | | | | $3,349.67 | | | | | $3,349.67 |
| Lara | Eschbach | CM | | 52.43 | | | | | $1,482.90 | | | | | $1,482.90 |
| Diana | Evans | CM | | 6.43 | | | | | $181.83 | | | | | $181.83 |
| Patricia | Eyre | CM | | 34.71 | | | | | $981.87 | | | | | $981.87 |
| Nicole | Fanslau | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Monay | Farrington | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Sharyn | Feldman | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Eleesha | Ferguson | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Beverley | Fernandes | CM | | 73.43 | | | | | $2,076.87 | | | | | $2,076.87 |
| Evan | Ferstenfeld | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Jaime | Finnegan | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Cecilia | Fitzi | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Matthew | Flanders | CM | | 12.00 | | | | | $339.41 | | | | | $339.41 |
| Regina | Floria | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Nicole | Florio | CM | | 23.00 | | | | | $650.54 | | | | | $650.54 |
| Christopher | Flynn | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Jennifer | Ford | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Ashley | Foster | CM | | 38.00 | | | | | $1,074.80 | | | | | $1,074.80 |
| Matt | Frank | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Michelle | Franklin | CM | | 32.43 | | | | | $917.22 | | | | | $917.22 |

Exhibit A

| First Name | Last Name | Type | Opt-in Look-Back Date | CM Weeks Between 8/1/14 and 11/26/16 | AOI Weeks Between Opt-in Look-Back Date and 11/26/16 | POI Weeks Between 8/1/14 and Opt-in Look-Back Date | POI Weeks Between Opt-in Look-Back Date and 11/26/16 | AOI and POI Weeks Between 11/27/16 and 12/29/18 | CM Weeks Between 8/1/14 and 11/26/16 Multiplied by $28.28/week | AOI Weeks Between Opt-in Look-Back Date and 11/26/16 Multiplied by $18.86/week | POI Weeks Between 8/1/14 and Opt-in Look-Back Date Multiplied by $28.28/week | POI Weeks Between Opt-in Look-Back Date and 11/26/16 Multiplied by $37.74/week | AOI and POI Weeks Between 11/27/16 and 12/29/18 Multiplied by $30.00/week | Total Individual Gross Payment Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Matt | Friend | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Debra | Funchion | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Darell | Garner | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Linda | Garvey-tarpy | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Heather | Gates | CM | | 83.43 | | | | | $2,359.72 | | | | | $2,359.72 |
| Anthony | Gawbill | CM | | 68.71 | | | | | $1,943.53 | | | | | $1,943.53 |
| Paula | Geyer | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Tara | Gianfrancesco | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| John | Giles | CM | | 18.43 | | | | | $521.24 | | | | | $521.24 |
| Anne | Gilmartin-Canny | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Deidre | Gladden | CM | | 18.43 | | | | | $521.24 | | | | | $521.24 |
| Maggie | Gleason | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Yvonne | Goff | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Rachel | Goldberg | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Odette | Gomez | CM | | 7.43 | | | | | $210.11 | | | | | $210.11 |
| Nelly | Gonzalez | CM | | 15.71 | | | | | $444.47 | | | | | $444.47 |
| Leah | Goodnow | CM | | 56.57 | | | | | $1,600.08 | | | | | $1,600.08 |
| Diana | Granados | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Latisha | Graves | CM | | 53.43 | | | | | $1,511.19 | | | | | $1,511.19 |
| Alexander | Gross | CM | | 23.57 | | | | | $666.70 | | | | | $666.70 |
| Alissa | Gruhler | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Mary | Haesemeyer | CM | | 26.00 | | | | | $735.39 | | | | | $735.39 |
| Kalina | Hajec | CM | | 68.71 | | | | | $1,943.53 | | | | | $1,943.53 |
| Julie | Hamel | CM | | 15.71 | | | | | $444.47 | | | | | $444.47 |
| Kiera | Hamilton | CM | | 65.43 | | | | | $1,850.60 | | | | | $1,850.60 |
| James | Hammel | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Mercedes | Hampson | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Courtney | Hann | CM | | 53.14 | | | | | $1,503.11 | | | | | $1,503.11 |
| Michael | Hargraves | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Vanessa | Hargrove | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Cecelia | Harris | CM | | 52.00 | | | | | $1,470.78 | | | | | $1,470.78 |
| Kamilah | Heaps | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Matthew | Heffner | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Alyson | Hemberger | CM | | 60.43 | | | | | $1,709.18 | | | | | $1,709.18 |
| Kristen | Henry | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Elizabeth | Herman | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Alison | Hill | CM | | 106.71 | | | | | $3,018.34 | | | | | $3,018.34 |
| Gabrielle | Hill | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Sean | Hogan | CM | | 85.14 | | | | | $2,408.20 | | | | | $2,408.20 |
| Lindsey | Hopper | CM | | 34.71 | | | | | $981.87 | | | | | $981.87 |
| Craig | Howard | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Jeffrey | Hudak | CM | | 16.57 | | | | | $468.71 | | | | | $468.71 |
| Paul | Hunsberger | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Marc | Jacobs | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Lisa | Johns | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Lucas | Johns | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Angel | Johnson | CM | | 97.43 | | | | | $2,755.70 | | | | | $2,755.70 |
| Lauren | Johnson | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Michelle | Johnson | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Jake | Jones | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| James | Jones | CM | | 51.00 | | | | | $1,442.50 | | | | | $1,442.50 |
| Jaz | Jones | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Lea | Jones | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Reina | Jones | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Vanette | Jordan-Lumogo | CM | | 6.00 | | | | | $169.71 | | | | | $169.71 |
| Stephen | Kaestle | CM | | 6.00 | | | | | $169.71 | | | | | $169.71 |
| Erin | Kelble | CM | | 15.71 | | | | | $444.47 | | | | | $444.47 |
| Cari | Kerby | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Margie | Kessler | CM | | 15.71 | | | | | $444.47 | | | | | $444.47 |
| Bonnie | Kiersh | CM | | 84.71 | | | | | $2,396.08 | | | | | $2,396.08 |
| Tara | Kieser | CM | | 68.71 | | | | | $1,943.53 | | | | | $1,943.53 |
| Holly | Kisailus | CM | | 82.14 | | | | | $2,323.35 | | | | | $2,323.35 |

Exhibit A

| First Name | Last Name | Type | Opt-in Look-Back Date | CM Weeks Between 8/1/14 and 11/26/16 | AOI Weeks Between Opt-in Look-Back Date and 11/26/16 | POI Weeks Between 8/1/14 and Opt-in Look-Back Date | POI Weeks Between Opt-in Look-Back Date and 11/26/16 | AOI and POI Weeks Between 11/27/16 and 12/29/18 | CM Weeks Between 8/1/14 and 11/26/16 Multiplied by $28.28/week | AOI Weeks Between Opt in Look-Back Date and 11/26/16 Multiplied by $18.86/week | POI Weeks Between 8/1/14 and Opt-in Look-Back Date Multiplied by $28.28/week | POI Weeks Between Opt in Look-Back Date and 11/26/16 Multiplied by $37.74/week | AOI and POI Weeks Between 11/27/16 and 12/29/18 Multiplied by $30.00/week | Total Individual Gross Payment Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Beth | Kosmin-Felix | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Elaine | Kraje | CM | | 4.00 | | | | | $113.14 | | | | | $113.14 |
| Alicia | Krakau | CM | | 51.00 | | | | | $1,442.50 | | | | | $1,442.50 |
| Jessica | Kramlik | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Jessica | Krawitz | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Kimberly | Kreiensieck-Sewell | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Nancy | Landis | CM | | 4.29 | | | | | $121.22 | | | | | $121.22 |
| Elizabeth | Laudenslager | CM | | 15.71 | | | | | $444.47 | | | | | $444.47 |
| Tionna | Le | CM | | 74.00 | | | | | $2,093.04 | | | | | $2,093.04 |
| Andrea | Leach | CM | | 82.00 | | | | | $2,319.31 | | | | | $2,319.31 |
| CJ | LeConey | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Jamie | Lee | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Alexia | Levy | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Tishonda | Lewis | CM | | 1.14 | | | | | $32.32 | | | | | $32.32 |
| Robert | Lippmann | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Jorge | Lozano | CM | | 30.00 | | | | | $848.53 | | | | | $848.53 |
| Jenn | Lubicky | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Erin | Lutz | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Ashley | Maccarter | CM | | 61.43 | | | | | $1,737.46 | | | | | $1,737.46 |
| Theresa | Machen | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Kelli | Maines | CM | | 26.43 | | | | | $747.51 | | | | | $747.51 |
| Brendalee | Maisonet | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Patricia | Marek | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Michele | Marino | CM | | 4.14 | | | | | $117.18 | | | | | $117.18 |
| Erin | Martin | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Bea | Martinez | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Ashley | Mason | CM | | 15.71 | | | | | $444.47 | | | | | $444.47 |
| Sache' | Massenburg | CM | | 15.71 | | | | | $444.47 | | | | | $444.47 |
| Freda-Rae | Mccray | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Molly | Mccready | CM | | 46.00 | | | | | $1,301.08 | | | | | $1,301.08 |
| Armina | Mcelveen | CM | | 103.14 | | | | | $2,917.32 | | | | | $2,917.32 |
| Justina | Mcentee | CM | | 56.57 | | | | | $1,600.08 | | | | | $1,600.08 |
| Kevin | McMackin | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Clara | Mcnamara | CM | | 72.57 | | | | | $2,052.63 | | | | | $2,052.63 |
| Denise | Meola | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Rachel | Mergaman | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Cameron | Meyer | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Margaret | Michie | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Katie | Misra | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Maureen | Morison | CM | | 68.71 | | | | | $1,943.53 | | | | | $1,943.53 |
| Nina | Morvin | CM | | 15.71 | | | | | $444.47 | | | | | $444.47 |
| Kathryn | Mowers | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Marissa | Mummert | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Courtney | Nash | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Kerri | Nash | CM | | 57.71 | | | | | $1,632.41 | | | | | $1,632.41 |
| Michael | Nathan | CM | | 7.57 | | | | | $214.15 | | | | | $214.15 |
| James | Nelson | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Nicole | Nelson | CM | | 36.43 | | | | | $1,030.36 | | | | | $1,030.36 |
| Suzanne | Nelson | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Deborah | Nicholas | CM | | 9.29 | | | | | $262.64 | | | | | $262.64 |
| Kathryn | Nicksic | CM | | 74.00 | | | | | $2,093.04 | | | | | $2,093.04 |
| Catherine | Noflau | CM | | 27.57 | | | | | $779.84 | | | | | $779.84 |
| Steven | Nusca | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Emily | Nussdorfer | CM | | 5.00 | | | | | $141.42 | | | | | $141.42 |
| Susan | Nych | CM | | 44.00 | | | | | $1,244.51 | | | | | $1,244.51 |
| Jazmin | Olmedo-Krawiec | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Caroline | O'Neill | CM | | 116.86 | | | | | $3,305.22 | | | | | $3,305.22 |
| Natasha | Owens | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Tom | Paulits | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Aimee | Petronglo | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Heather | Phillips | CM | | 65.43 | | | | | $1,850.60 | | | | | $1,850.60 |
| Nicole | Phoenix | CM | | 88.71 | | | | | $2,509.22 | | | | | $2,509.22 |

Exhibit A

| First Name | Last Name | Type | Opt-in Look-Back Date | CM Weeks Between 8/1/14 and 11/26/16 | AOI Weeks Between Opt-in Look-Back Date and 11/26/16 | POI Weeks Between 8/1/14 and Opt-in Look-Back Date | POI Weeks Between Opt-in Look-Back Date and 11/26/16 | AOI and POI Weeks Between 11/27/16 and 12/29/18 | CM Weeks Between 8/1/14 and 11/26/16 Multiplied by $28.28/week | AOI Weeks Between Opt-in Look-Back Date and 11/26/16 Multiplied by $18.86/week | POI Weeks Between 8/1/14 and Opt-in Look-Back Date Multiplied by $28.28/week | POI Weeks Between Opt-in Look-Back Date and 11/26/16 Multiplied by $37.74/week | AOI and POI Weeks Between 11/27/16 and 12/29/18 Multiplied by $30.00/week | Total Individual Gross Payment Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Linda | Pinder | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Jacqueline | Poli | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Marissa | Polselli | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Vanessa | Price | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Jennifer | Pyott | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Beth | Ralls | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| James | Ramey | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Michele | Ranieri | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Kali | Reierson | CM | | 98.29 | | | | | $2,779.94 | | | | | $2,779.94 |
| Jason | Rhoades | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Bridget | Rivera | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Sarah | Robertson | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Danielle | Rodriguez | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Christine | Romagano | CM | | 51.00 | | | | | $1,442.50 | | | | | $1,442.50 |
| Christian | Romonusky | CM | | 108.14 | | | | | $3,058.74 | | | | | $3,058.74 |
| Regina | Rose | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Kimberly | Sabatino | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Alexa | Scarlett | CM | | 11.00 | | | | | $311.13 | | | | | $311.13 |
| Maureen | Schmidt | CM | | 58.00 | | | | | $1,640.49 | | | | | $1,640.49 |
| Aimee | Schulz-Plarr | CM | | 89.43 | | | | | $2,529.42 | | | | | $2,529.42 |
| Lauren | Schumacher | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Evelyn | Scott | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Shellyann | Scott | CM | | 36.71 | | | | | $1,038.44 | | | | | $1,038.44 |
| Rebecca | Shields | CM | | 61.43 | | | | | $1,737.46 | | | | | $1,737.46 |
| Latryce | Shubert | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Alicia | Sides | CM | | 111.71 | | | | | $3,159.76 | | | | | $3,159.76 |
| Janice | Singer | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Tyree | Singleton | CM | | 89.00 | | | | | $2,517.30 | | | | | $2,517.30 |
| Aja | Southerland | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Cecilia | Spencer | CM | | 68.71 | | | | | $1,943.53 | | | | | $1,943.53 |
| Nicole | Spencer | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Amanda | Spivak | CM | | 29.43 | | | | | $832.37 | | | | | $832.37 |
| Erica | Staehle | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Marvin | Steadman | CM | | 4.71 | | | | | $133.34 | | | | | $133.34 |
| Lindsey | Stetson | CM | | 52.43 | | | | | $1,482.90 | | | | | $1,482.90 |
| Jessica | Stoicsitz | CM | | 61.00 | | | | | $1,725.34 | | | | | $1,725.34 |
| Sarah | Stouth | CM | | 73.57 | | | | | $2,080.91 | | | | | $2,080.91 |
| Lauren | Stump | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Linda | Swartz | CM | | 6.57 | | | | | $185.87 | | | | | $185.87 |
| Carmen | Taylor | CM | | 108.57 | | | | | $3,070.86 | | | | | $3,070.86 |
| Eve | Terran | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Jennifer | Thomason | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Ronald | Tilghman | CM | | 110.71 | | | | | $3,131.47 | | | | | $3,131.47 |
| Ryan | Tobin | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Marilyn | Torres | CM | | 43.71 | | | | | $1,236.43 | | | | | $1,236.43 |
| Patricia | Townsend | CM | | 97.71 | | | | | $2,763.78 | | | | | $2,763.78 |
| Joe | Turney | CM | | 15.71 | | | | | $444.47 | | | | | $444.47 |
| Carla | Villalobos | CM | | 15.71 | | | | | $444.47 | | | | | $444.47 |
| Laura | Viveros | CM | | 28.71 | | | | | $812.16 | | | | | $812.16 |
| Valerie | Voluntad | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Joneen | Walker | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Nancy | Walters | CM | | 68.71 | | | | | $1,943.53 | | | | | $1,943.53 |
| Keyanna | Webb | CM | | 51.00 | | | | | $1,442.50 | | | | | $1,442.50 |
| Jomel | White | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| NJ | Wiggins | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Sandrine | Wilson | CM | | 15.71 | | | | | $444.47 | | | | | $444.47 |
| Eirean | Yetter | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Lamont | Youngblood | CM | | 18.43 | | | | | $521.24 | | | | | $521.24 |
| Kimberly | Zawacki | CM | | 121.14 | | | | | $3,426.44 | | | | | $3,426.44 |
| Shereese | Bell | AOI | 1/19/2015 | | 94.57 | | | 58.71 | | $1,783.26 | | | $1,761.43 | $3,544.68 |
| Carlie A. | Briggs | AOI | 12/18/2014 | | 8.57 | | | | | $161.62 | | | | $161.62 |
| Lindsey | Colosey | AOI | 1/8/2015 | | 49.00 | | | | | $923.95 | | | | $923.95 |

Exhibit A

| First Name | Last Name | Type | Opt-in Look-Back Date | CM Weeks Between 8/1/14 and 11/26/16 | AOI Weeks Between Opt-in Look-Back Date and 11/26/16 | POI Weeks Between 8/1/14 and Opt-in Look-Back Date | POI Weeks Between Opt-in Look-Back Date and 11/26/16 | AOI and POI Weeks Between 11/27/16 and 12/29/18 | CM Weeks Between 8/1/14 and 11/26/16 Multiplied by $28.28/week | AOI Weeks Between Opt-in Look-Back Date and 11/26/16 Multiplied by $18.86/week | POI Weeks Between 8/1/14 and Opt-in Look-Back Date Multiplied by $28.28/week | POI Weeks Between Opt-in Look-Back Date and 11/26/16 Multiplied by $37.74/week | AOI and POI Weeks Between 11/27/16 and 12/29/18 Multiplied by $30.00/week | Total Individual Gross Payment Amount |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jessica | Greiner | AOI | 9/18/2014 | | 38.71 | | | 48.71 | | $730.00 | | | $1,461.43 | $2,191.43 |
| Maria Teresa | Guereque | AOI | 12/18/2014 | | 77.86 | | | | | $1,468.09 | | | | $1,468.09 |
| Nicole | Havermale | AOI | 1/22/2015 | | 38.71 | | | 109.00 | | $730.00 | | | $3,270.00 | $4,000.00 |
| Tracey | James | AOI | 12/28/2014 | | 99.86 | | | 49.86 | | $1,882.92 | | | $1,495.71 | $3,378.64 |
| Tanya D. | Johnson | AOI | 1/11/2015 | | 9.71 | | | | | $183.17 | | | | $183.17 |
| Nora | Quintana | AOI | 12/18/2014 | | 94.57 | | | 54.43 | | $1,783.26 | | | $1,632.86 | $3,416.11 |
| Kali | Reierson | AOI | 12/14/2014 | | 82.43 | | | | | $1,554.29 | | | | $1,554.29 |
| Leah | Sherrill | AOI | 11/21/2014 | | 90.43 | | | | | $1,705.14 | | | | $1,705.14 |
| Angelica | Silva | AOI | 1/22/2015 | | 45.14 | | | | | $851.22 | | | | $851.22 |
| Liane | Sparks | AOI | 12/22/2014 | | 14.43 | | | | | $272.07 | | | | $272.07 |
| Daryl | Traylor | AOI | 10/27/2014 | | 23.29 | | | | | $439.08 | | | | $439.08 |
| Whitney | Tucker | AOI | 1/12/2015 | | 97.71 | | | 83.43 | | $1,842.52 | | | $2,502.86 | $4,345.38 |
| Inea | West | AOI | 8/23/2014 | | 27.43 | | | | | $517.20 | | | | $517.20 |
| TOTALS | | | | 18356.29 | 892.43 | 397.43 | 3390.29 | 1662.71 | $519,194.13 | $16,827.79 | $11,240.98 | $127,855.67 | $49,881.43 | $725,000.00 |

# Exhibit B

# Exhibit B: Notice to "Arizona Opt-Ins"

### NOTICE OF SETTLEMENT

### *Gwendolyn Hall v. Accolade, Inc., 2:17-cv-03423-GEKP*
### United States District Court, Eastern District of Pennsylvania

**TO:**     **[*INSERT NAME*]**

**YOU ARE COVERED BY THE SETTLEMENT OF THIS CLASS ACTION LAWSUIT.**

**A FEDERAL JUDGE AUTHORIZED THIS NOTICE, WHICH SUMMARIZES THE TERMS OF THE SETTLEMENT AND EXPLAINS YOUR RIGHTS UNDER THE SETTLEMENT.**

**PLEASE READ THIS DOCUMENT CAREFULLY.**

| 1. | Who is covered by the settlement? |
|---|---|

The United States District Court in Philadelphia, PA presides over this lawsuit, which was filed in August 2017 by Gwendolyn Hall against Accolade, Inc.

The lawsuit addresses whether or not Accolade paid its Health Assistants ("HAs") in compliance with a federal law called the Fair Labor Standards Act and a state law called the Pennsylvania Minimum Wage Act.  We will refer to the Fair Labor Standards Act claim as the "**Federal Overtime Claim**."  We will refer to the Pennsylvania Minimum Wage Act claim as the "**PA Overtime Claim**."

In December 2017, all individuals potentially covered by the Federal Overtime Claim were mailed a package that included a description of the Federal Overtime Claim and a form that the recipient was required to return in order to pursue the Federal Overtime Claim.  A total of 63 individuals returned these forms.  You, **[*Insert Name*]**, returned a form.  As a result, you are covered by the Federal Overtime Claim.

In addition, all individuals employed in Pennsylvania as HAs between August 1, 2014 and November 26, 2016 are covered by the PA Overtime Claim.  You, **[*Insert Name*]**, are ***not*** covered by the PA Overtime Claim because you worked in Arizona.

| 2. | What is alleged in the lawsuit? |
|---|---|

As discussed below, the settled lawsuit covers two separate time periods:

**August 1, 2014 until November 26, 2016:**  Both the Federal Overtime Claim and the PA Overtime Claim apply to this period.  Under the overtime laws, some employees are entitled to "time and one-half" overtime pay when they work over 40 hours per week.  However, certain salaried employees are "exempt" from the overtime laws.  Prior to November 26, 2016, Accolade classified HAs as falling within the "Administrative" exemption to the overtime laws, and as a result, did not pay overtime to the HAs.  Under this "Administrative" exemption, salaried employees are not legally entitled to overtime pay if: (i) they primarily perform office or non-manual work directly related to the general business operations of Accolade or its customers and

(ii) their primary duties include the "exercise of discretion and independent judgment with respect to matters of significance."  Accolade maintains that HAs fit each of these criteria and, therefore, were not entitled to overtime pay.  Accolade also maintains that, even if HAs were entitled to overtime pay, they did not work overtime hours often.  Ms. Hall disagrees with Accolade.  She contends that HAs did not fall within the "Administrative" exemption and that HAs often worked overtime hours.

The overtime "misclassification" claim described in the above paragraph applies to you, **[*Insert Name*]**, because you worked as an HA prior to November 26, 2016.  **OR**  The overtime "misclassification" claim described in the above paragraph does ***not*** apply to you, **[*Insert Name*]**, because you did not work as an HA prior to November 26, 2016.

**November 27, 2016 until December 29, 2018:**  Only the Federal Overtime Claim applies to this period.  During this period, Accolade paid HAs an hourly wage plus "time and one-half" overtime pay when they worked over 40 hours per week.  According to Ms. Hall, Accolade improperly failed to give HAs overtime credit for all compensable work activities before and after their shifts.  These activities include, for example, time spent logging into computer systems at the beginning of the shift and time spent finishing customer calls at the end of the shift.  Accolade denies Ms. Hall's allegation and asserts that it paid HAs for all compensable work activities.  Accolade also asserts that much of the allegedly unpaid time is not covered by the Federal Overtime Claim because, even if the time were credited, the HA's total weekly hours would still fall below 40.

The unpaid work claim described in the above paragraph applies to you, **[*Insert Name*]**, because you worked as an HA after November 27, 2016.  **OR**  The unpaid work claim described in the above paragraph does ***not*** apply to you, **[*Insert Name*]**, because you did not work as an HA after November 27, 2016.

| **3.** | **Why is there a settlement?** |
|---|---|

The Court has not decided who will win the lawsuit.  So both the HAs and Accolade run the risk of losing.

***The settlement is a compromise***.  It allows both sides to avoid the costs, delays, and risks of further litigation and provides money to Ms. Hall and other HAs covered by the settlement.

In reaching this settlement, Accolade denies that it violated any laws, and continues to assert that its pay practices were and are entirely legal.

| **4.** | **How much money will I recover under the settlement?** |
|---|---|

The Judge will decide whether the settlement should be approved as fair and reasonable.  If the Judge approves the settlement, a total amount of $1,100,000 will be distributed to the 323 HAs covered by the lawsuit and to the lawyers identified in Section 9.  If the Court approves the requested legal fees, expenses, and service awards, a total of $725,000.00 will be available to the 323 HAs covered by the lawsuit.

If the Court approves the settlement, you, **[*INSERT NAME*]**, will receive an individual payment in the gross amount of **$[*insert Payment Amount*]**.  This gross payment amount is considered wage income.  So your settlement check will be reduced to reflect all payroll deductions and taxes ordinarily paid by ***both*** employers and employees.  You will receive an IRS

W-2 Form reflecting this payment and the associated taxes and withholdings.

The method for determining the individual payment amounts owed to you and other individuals covered by the settlement is described below:

- **Arizona HAs:**  Arizona HAs do not benefit from the PA Overtime Claim because they did not work in Pennsylvania.  Arizona HAs, therefore, are limited to the Federal Overtime Claim.  **YOU, [*INSERT NAME*], FALL INTO THIS CATEGORY.**  The Federal Overtime Claim entitles you to seek unpaid overtime wages for all weeks between [*Insert Opt-In Look Back Date*] and December 29, 2018.  Under the payment formula, you are entitled to: **(i)** $18.86 for each week employed as an HA between [*Insert Opt-In Look Back Date*] and November 26, 2016 *plus* **(ii)** $30.00 for each week employed as an HA between November 27, 2016 and December 29, 2018.  Your Gross Payment of **$[*insert Payment Amount*]** is based on this formula.

- **Pennsylvania HAs Covered by Both the Federal Overtime Claim and the PA Overtime Claim:**  All Pennsylvania HAs covered by the settlement benefit from the PA Overtime Claim.  In addition, some of these Pennsylvania HAs also benefit from the Federal Overtime Claim because they previously returned the form required to pursue such claim.  Under the payment formula, these individuals are entitled to: **(i)** $28.28-$37.74 for each week employed as an HA between August 1, 2014 and November 26, 2016 *plus* **(ii)** $30.00 for each week employed as an HA between November 27, 2016 and December 29, 2018.

- **Pennsylvania HAs Covered by the PA Overtime Claim Only:**  Pennsylvania HAs who did not previously return the form required to pursue the Federal Overtime Claim are nonetheless covered by the PA Overtime Claim.  Under the payment formula, these individuals are entitled to $28.28 for each week employed as an HA between August 1, 2014 and November 26, 2016.

If you have any questions about the determination of your payment amount, please call one of the law firms listed in Section 9.

Also, please keep in mind that the settlement payments described above will be made *only if* the Judge approves the settlement.

| 5. | How can I receive a settlement payment? |
|---|---|

If this Notice is addressed to you, then you are covered by the settlement and ***you do not need to do anything to receive a settlement payment.***  Of course, the payment will not be made unless the Judge approves the settlement.

| 6. | What do I give up by receiving a settlement payment? |
|---|---|

If you do not exclude yourself from the settlement by following the procedures in Section 7, you will release and forever discharge Accolade (as well as its past, present, or future parents, subsidiaries, affiliates or related companies, successors, and predecessors, as well as their respective past, present, and future owners, officers, directors, agents, employees, successors,

3

heirs, spouses, administrators, executors, partners, assigns, attorneys, and insurers) from all claims arising between August 1, 2014 and [*Insert Final Approval Date*] and asserted in or related to the Action, including, but not limited to, all such claims seeking unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*, the Arizona Wage Law, Ariz. Rev. Stat. §§ 23-350, *et seq.*, or any other federal, state, or local statute, regulation, ordinance, or common law theory seeking unpaid wages or any associated penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

If you have any questions about the scope of this release, please call one of the law firms listed in Section 8.

| 7. | How do I exclude myself from this settlement? |
|---|---|

If you do not want to participate in the settlement, then you must take steps to exclude yourself.

To exclude yourself, you must prepare a note or letter simply stating: "I wish to be excluded from the Accolade Wage Lawsuit." The letter or note may be typed or handwritten. Be sure to include your signature, printed full name, address, and phone number. To be valid, your exclusion request must be postmarked no later than **[INSERT DATE]** and be mailed to: Accolade Wage Lawsuit, c/o Settlement Services, Inc., 2032-D Thomasville Road, Tallahassee, FL 32308.

Importantly, if you exclude yourself from the settlement, you will not receive any money payment, you will not be legally bound by the settlement, and you will not waive or release any legal claims against Accolade.

| 8. | How do I object to the settlement? |
|---|---|

You can object to the settlement if you believe it is unfair or should not be approved. The Judge will consider your objection in deciding whether to approve the settlement.

To object to the settlement, you must prepare a letter or note stating that you "object" to the settlement in the Accolade Wage Lawsuit. The letter or note may be handwritten. Be sure to include your signature, printed full name, address, and telephone number. You may (but are not required to) consult with or retain an attorney to assist you in drafting the objection. If you are not being assisted by an attorney, simply do your best to describe the reasons why you object to the settlement. However, if you object, your written objection must state with specificity the grounds for your objection. Also, you must state whether the objection applies to you alone, to you and some other HAs covered by the settlement, or to you and all other HAs covered by the settlement.

To be valid, your objection ***must be postmarked on or before* [INSERT DATE]** and must be mailed to: Accolade Wage Lawsuit, c/o Settlement Services, Inc., 2032-D Thomasville Road, Tallahassee, FL 32308.

| 9. | Do I have a lawyer? |
|---|---|

Plaintiff and other individuals who do not exclude themselves from the settlement are

4

represented by the following law firms:  (i) **Winebrake & Santillo, LLC**, 715 Twining Road, Suite 211, Dresher, PA 19025; Phone **(215) 884-2491**; and (ii) **Hardwick Benfer, LLC**, 179 North Broad Street, Doylestown, PA  18901; Phone **(215) 230-1912**.  Lawyers from these firms will answer your questions about the lawsuit and settlement free of charge and in strict confidence.  If you call, please identify yourself as a "Class Member" in the "Accolade Wage Lawsuit" and ask to speak with one of the assigned lawyers.

| **10.** | **How do the lawyers get paid and does Ms. Hall get any extra money?** |

You will **_not_** pay any legal fees or expenses out of your individual settlement payment described in Section 4.  Rather, the above firms will ask the Judge to approve legal fees and expenses of $363,000 (which is 33% of the total $1,100,000 settlement payment).  The Judge has not yet decided whether she will approve these requested fees and expenses.

In addition, the above lawyers will ask the Judge to approve extra "service award" payments of $10,000 to Ms. Hall and $1,000 to two HAs who were required to testify at depositions.  The Judge has not yet decided whether she will approve these requested service awards.

| **11.** | **When and where will the Court decide whether to approve the settlement?** |

The Court will hold a hearing to decide whether to approve the settlement.  You are not required or expected to attend that hearing.  However, you are welcome to attend.

During the hearing, the Judge will consider whether the $725,000 in payments to the 323 individuals covered by the settlement are fair and should be approved.  The Judge also will consider the fairness and reasonableness of the $363,000 in requested legal fees and expenses and the $12,000 in requested service awards.  In making her decision, the Judge will consider any written objections to the settlement and will hear from any individuals (or their legal representatives) who wish to be heard.

The hearing will take place on [*Insert Date*] at [*Insert Time*] in Courtroom [*Insert Room Number*] of the United States Courthouse, 601 Market Street, Philadelphia, PA 19106.

| **12.** | **How do I obtain more information?** |

This Notice summarizes the most important aspects of the proposed settlement.  You can obtain further information by calling one of the law firms listed in Section 9.

Dated: [*Insert Date*]              Approved:     Hon. Gene E.K. Pratter
                                                  United States District Court
                                                  Eastern District of Pennsylvania

# Exhibit C

# <u>Exhibit C: Notice to "Pennsylvania Opt-Ins"</u>

## <u>NOTICE OF SETTLEMENT</u>

### *Gwendolyn Hall v. Accolade, Inc., 2:17-cv-03423-GEKP*
### United States District Court, Eastern District of Pennsylvania

**TO:**      **[*INSERT NAME*]**

**YOU ARE COVERED BY THE SETTLEMENT OF THIS CLASS ACTION LAWSUIT.**

**A FEDERAL JUDGE AUTHORIZED THIS NOTICE, WHICH SUMMARIZES THE TERMS OF THE SETTLEMENT AND EXPLAINS YOUR RIGHTS UNDER THE SETTLEMENT.**

**PLEASE READ THIS DOCUMENT CAREFULLY.**

| 1. | Who is covered by the settlement? |
|---|---|

The United States District Court in Philadelphia, PA presides over this lawsuit, which was filed in August 2017 by Gwendolyn Hall against Accolade, Inc.

The lawsuit addresses whether or not Accolade paid its Health Assistants ("HAs") in compliance with a federal law called the Fair Labor Standards Act and a state law called the Pennsylvania Minimum Wage Act. We will refer to the Fair Labor Standards Act claim as the "**Federal Overtime Claim**." We will refer to the Pennsylvania Minimum Wage Act claim as the "**PA Overtime Claim**."

In December 2017, all individuals potentially covered by the Federal Overtime Claim were mailed a package that included a description of the Federal Overtime Claim and a form that the recipient was required to return in order to pursue the Federal Overtime Claim. A total of 63 individuals returned these forms. You, **[*Insert Name*]**, returned a form. As a result, you are covered by the Federal Overtime Claim.

In addition, all individuals employed in Pennsylvania as HAs between August 1, 2014 and November 26, 2016 are covered by the PA Overtime Claim. You, **[*Insert Name*]**, are covered by the PA Overtime Claim. **OR** You, **[*Insert Name*]**, are *not* covered by the PA Overtime Claim because you did not work as an HA prior to November 26, 2016.

| 2. | What is alleged in the lawsuit? |
|---|---|

As discussed below, the settled lawsuit covers two separate time periods:

<u>**August 1, 2014 until November 26, 2016:**</u>  Both the Federal Overtime Claim and the PA Overtime Claim apply to this period. Under the overtime laws, some employees are entitled to "time and one-half" overtime pay when they work over 40 hours per week. However, certain salaried employees are "exempt" from the overtime laws. Prior to November 26, 2016, Accolade classified HAs as falling within the "Administrative" exemption to the overtime laws, and as a result, did not pay overtime to the HAs. Under this "Administrative" exemption, salaried employees are not legally entitled to overtime pay if: (i) they primarily perform office or non-

manual work directly related to the general business operations of Accolade or its customers and (ii) their primary duties include the "exercise of discretion and independent judgment with respect to matters of significance." Accolade maintains that HAs fit each of these criteria and, therefore, were not entitled to overtime pay. Accolade also maintains that, even if HAs were entitled to overtime pay, they did not work overtime hours often. Ms. Hall disagrees with Accolade. She contends that HAs did not fall within the "Administrative" exemption and that HAs often worked overtime hours.

The overtime "misclassification" claim described in the above paragraph applies to you, **[*Insert Name*]**, because, according to Accolade's payroll records, you worked as an HA prior to November 26, 2016. **OR** The overtime "misclassification" claim described in this paragraph does **not** apply to you, **[*Insert Name*]**, because you did not work as an HA prior to November 26, 2016.

**November 27, 2016 until December 29, 2018:** Only the Federal Overtime Claim applies to this period. During this period, Accolade paid HAs an hourly wage plus "time and one-half" overtime pay when they worked over 40 hours per week. According to Ms. Hall, Accolade improperly failed to give HAs overtime credit for all compensable work activities before and after their shifts. These activities include, for example, time spent logging into computer systems at the beginning of the shift and time spent finishing customer calls at the end of the shift. Accolade denies Ms. Hall's allegation and asserts that it paid HAs for all compensable work activities. Accolade also asserts that much of the allegedly unpaid time is not covered by the Federal Overtime Claim because, even if the time were credited, the HA's total weekly hours would still fall below 40.

The unpaid work claim described in the above paragraph applies to you, **[*Insert Name*]**, because you worked as an HA after November 27, 2016. **OR** The unpaid work claim described in the above paragraph does **not** apply to you, **[*Insert Name*]**, because you did not work as a HA after November 27, 2016.

| 3. | **Why is there a settlement?** |
|----|---------------------------------|

The Court has not decided who will win the lawsuit. So both the HAs and Accolade run the risk of losing.

***The settlement is a compromise***. It allows both sides to avoid the costs, delays, and risks of further litigation and provides money to Ms. Hall and other HAs covered by the settlement.

In reaching this settlement, Accolade denies that it violated any laws, and continues to assert that its pay practices were and are entirely legal.

| 4. | **How much money will I recover under the settlement?** |
|----|----------------------------------------------------------|

The Judge will decide whether the settlement should be approved as fair and reasonable. If the Judge approves the settlement, a total amount of $1,100,000 will be distributed to the 323 HAs covered by the lawsuit and to the lawyers identified in Section 9. If the Court approves the requested legal fees, expenses, and service awards, a total of $725,000.00 will be available to the 323 HAs covered by the lawsuit.

If the Court approves the settlement, you, **[*INSERT NAME*]**, will receive an individual payment in the gross amount of **$[*insert Payment Amount*]**. This gross payment amount is

considered wage income.  So your settlement check will be reduced to reflect all payroll deductions and taxes ordinarily paid by **_both_** employers and employees.  You will receive an IRS W-2 Form reflecting this payment and the associated taxes and withholdings.

The method for determining the individual payment amounts owed to you and other individuals covered by the settlement is described below:

- **Arizona HAs:**  Arizona HAs do not benefit from the PA Overtime Claim because they did not work in Pennsylvania.  Arizona HAs, therefore, are limited to the Federal Overtime Claim.  Under the payment formula, these individuals are entitled to: **(i)** $18.86 for each week employed as an HA between early-2015 and November 26, 2016 *plus* **(ii)** $30.00 for each week employed as an HA between November 27, 2016 and December 29, 2018.

- **Pennsylvania HAs Covered by Both the Federal Overtime Claim and the PA Overtime Claim:**  All Pennsylvania HAs covered by the settlement benefit from the PA Overtime Claim because they worked in Pennsylvania.  In addition, some of these Pennsylvania HAs also benefit from the Federal Overtime Claim because they previously returned the form required to pursue the Federal Overtime Claim.  **YOU, [*INSERT NAME*], FALL INTO THIS CATEGORY.**  Under the payment formula, you are entitled to: **(i)** $28.28 for each week employed as a HA during the period between August 1, 2014 and your [*Insert Opt-In Look Back Date*] *plus* **(ii)** $37.74 for each week employed as a HA between [*Insert Opt-In Look Back Date*] and November 26, 2016 *plus* **(iii)** $30.00 for each week employed as a HA between November 27, 2016 and December 29, 2018.  Your Gross Payment of **$[*insert Payment Amount*]** is based on this formula.

- **Pennsylvania HAs Covered by the PA Overtime Claim Only:**  Pennsylvania HAs who did not previously return the form required to pursue the Federal Overtime Claim are nonetheless covered by the PA Overtime Claim.  Under the payment formula, these individuals are entitled to $28.28 for each week employed as an HA between August 1, 2014 and November 26, 2016.

If you have any questions about the determination of your payment amount, please call one of the law firms listed in Section 9.

Also, please keep in mind that the settlement payments described above will be made *only if* the Judge approves the settlement.

| **5.** | **How can I receive a settlement payment?** |
|---|---|

If this Notice is addressed to you, then you are covered by the settlement and **_you do not need to do anything to receive a settlement payment._**  Of course, the payment will not be made unless the Judge approves the settlement.

| **6.** | **What do I give up by receiving a settlement payment?** |
|---|---|

If you do not exclude yourself from the settlement by following the procedures in Section 7, you will release and forever discharge Accolade (as well as its past, present, or future parents,

subsidiaries, affiliates or related companies, successors, and predecessors, as well as their respective past, present, and future owners, officers, directors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, attorneys, and insurers) from all claims arising between August 1, 2014 and [*Insert Final Approval Date*] and asserted in or related to the Action, including, but not limited to, all such claims seeking unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.*, the Arizona Wage Law, Ariz. Rev. Stat. §§ 23-350, *et seq.*, or any other federal, state, or local statute, regulation, ordinance, or common law theory seeking unpaid wages or any associated penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

If you have any questions about the scope of this release, please call one of the law firms listed in Section 9.

**7.    How do I exclude myself from this settlement?**

If you do not want to participate in the settlement, then you must take steps to exclude yourself.

To exclude yourself, you must prepare a note or letter simply stating: "I wish to be excluded from the Accolade Wage Lawsuit." The letter or note may be typed or handwritten. Be sure to include your signature, printed full name, address, and phone number. To be valid, your exclusion request must be postmarked no later than **[*INSERT DATE*]** and be mailed to: Accolade Wage Lawsuit, c/o Settlement Services, Inc., 2032-D Thomasville Road, Tallahassee, FL 32308.

Importantly, if you exclude yourself from the settlement, you will not receive any money payment, you will not be legally bound by the settlement, and you will not waive or release any legal claims against Accolade.

**8.    How do I object to the settlement?**

You can object to the settlement if you believe it is unfair or should not be approved. The Judge will consider your objection in deciding whether to approve the settlement.

To object to the settlement, you must prepare a letter or note stating that you "object" to the settlement in the Accolade Wage Lawsuit. The letter or note may be handwritten. Be sure to include your signature, printed full name, address, and telephone number. You may (but are not required to) consult with or retain an attorney to assist you in drafting the objection. If you are not being assisted by an attorney, simply do your best to describe the reasons why you object to the settlement.   However, if you object, your written objection must state with specificity the grounds for your objection. Also, you must state whether the objection applies to you alone, to you and some other HAs covered by the settlement, or to you and all other HAs covered by the settlement.

To be valid, your objection ***must be postmarked on or before*** **[*INSERT DATE*]** and must be mailed to:  Accolade Wage Lawsuit, c/o Settlement Services, Inc., 2032-D Thomasville Road, Tallahassee, FL 32308.

| 9. | Do I have a lawyer? |
|---|---|

Plaintiff and other individuals who do not exclude themselves from the settlement are represented by the following law firms:  (i) **Winebrake & Santillo, LLC**, 715 Twining Road, Suite 211, Dresher, PA 19025; Phone **(215) 884-2491**; and (ii) **Hardwick Benfer, LLC**, 179 North Broad Street, Doylestown, PA  18901; Phone **(215) 230-1912**.  Lawyers from these firms will answer your questions about the lawsuit and settlement free of charge and in strict confidence.  If you call, please identify yourself as a "Class Member" in the "Accolade Wage Lawsuit" and ask to speak with one of the assigned lawyers.

| 10. | How do the lawyers get paid and does Ms. Hall get any extra money? |
|---|---|

You will **_not_** pay any legal fees or expenses out of your individual settlement payment described in Section 4.  Rather, the above firms will ask the Judge to approve legal fees and expenses of $363,000 (which is 33% of the total $1,100,000 settlement payment).  The Judge has not yet decided whether she will approve these requested fees and expenses.

In addition, the above lawyers will ask the Judge to approve extra "service award" payments of $10,000 to Ms. Hall and $1,000 to two HAs who were required to testify at depositions.  The Judge has not yet decided whether she will approve these requested service awards.

| 11. | When and where will the Court decide whether to approve the settlement? |
|---|---|

The Court will hold a hearing to decide whether to approve the settlement.  You are not required or expected to attend that hearing.  However, you are welcome to attend.

During the hearing, the Judge will consider whether the $725,000 in payments to the 323 individuals covered by the settlement are fair and should be approved.  The Judge also will consider the fairness and reasonableness of the $363,000 in requested legal fees and expenses and the $12,000 in requested service awards.  In making her decision, the Judge will consider any written objections to the settlement and will hear from any individuals (or their legal representatives) who wish to be heard.

The hearing will take place on [*Insert Date*] at [*Insert Time*] in Courtroom [*Insert Room Number*] of the United States Courthouse, 601 Market Street, Philadelphia, PA 19106.

| 12. | How do I obtain more information? |
|---|---|

This Notice summarizes the most important aspects of the proposed settlement.  You can obtain further information by calling one of the law firms listed in Section 9.

Dated:  [*Insert Date*]                    Approved:        Hon. Gene E.K. Pratter
                                                           United States District Court
                                                           Eastern District of Pennsylvania

# Exhibit D

# Exhibit D: Notice to "Non-Opt-In Class Members"

**NOTICE OF SETTLEMENT**

***Gwendolyn Hall v. Accolade, Inc., 2:17-cv-03423-GEKP***
**United States District Court, Eastern District of Pennsylvania**

**TO:**   **[*INSERT NAME*]**

**YOU ARE COVERED BY THE SETTLEMENT OF THIS CLASS ACTION LAWSUIT.**

**A FEDERAL JUDGE AUTHORIZED THIS NOTICE, WHICH SUMMARIZES THE TERMS OF THE SETTLEMENT AND EXPLAINS YOUR RIGHTS UNDER THE SETTLEMENT.**

**PLEASE READ THIS DOCUMENT CAREFULLY.**

| 1. | Who is covered by the settlement? |
|---|---|

The United States District Court in Philadelphia, PA presides over this lawsuit, which was filed in August 2017 by Gwendolyn Hall against Accolade, Inc.

The lawsuit addresses whether or not Accolade paid its Health Assistants ("HAs") in compliance with a federal law called the Fair Labor Standards Act and a state law called the Pennsylvania Minimum Wage Act.  We will refer to the Fair Labor Standards Act claim as the "**Federal Overtime Claim**."  We will refer to the Pennsylvania Minimum Wage Act claim as the "**PA Overtime Claim**."

In December 2017, all individuals potentially covered by the Federal Overtime Claim were mailed a package that included a description of the Federal Overtime Claim and a form that the recipient was required to return in order to pursue the Federal Overtime Claim.  A total of 63 individuals returned these forms.  You, **[*Insert Name*]**, did not return a form.  As a result, you are ***not*** covered by the Federal Overtime Claim.

In addition, all individuals employed in Pennsylvania as HAs between August 1, 2014 and November 26, 2016 are covered by the PA Overtime Claim.  You, **[*Insert Name*]**, are covered by the PA Overtime Claim.

| 2. | What is alleged in the lawsuit? |
|---|---|

As discussed below, the settled lawsuit covers two separate time periods:

**August 1, 2014 until November 26, 2016:**  Both the Federal Overtime Claim and the PA Overtime Claim apply to this period.  Under the overtime laws, some employees are entitled to "time and one-half" overtime pay when they work over 40 hours per week.  However, certain salaried employees are "exempt" from the overtime laws.  Prior to November 26, 2016, Accolade classified HAs as falling within the "Administrative" exemption to the overtime laws, and as a result, did not pay overtime to the HAs.  Under this "Administrative" exemption, salaried employees are not legally entitled to overtime pay if: (i) they primarily perform office or non-

1

manual work directly related to the general business operations of Accolade or its customers and (ii) their primary duties include the "exercise of discretion and independent judgment with respect to matters of significance." Accolade maintains that HAs fit each of these criteria and, therefore, were not entitled to overtime pay. Accolade also maintains that, even if HAs were entitled to overtime pay, they did not work overtime hours often. Ms. Hall disagrees with Accolade. She contends that HAs did not fall within the "Administrative" exemption and that HAs often worked overtime hours.

The overtime "misclassification" claim described in the above paragraph applies to you, **[*Insert Name*]**, because you worked as an HA between August 1, 2014 and November 26, 2016.

**November 27, 2016 until December 29, 2018:** Only the Federal Overtime Claim applies to this period. During this period, Accolade paid HAs an hourly wage plus "time and one-half" overtime pay when they worked over 40 hours per week. According to Ms. Hall, Accolade improperly failed to give HAs overtime credit for all compensable work activities before and after their shifts. These activities include, for example, time spent logging into computer systems at the beginning of the shift and time spent finishing customer calls at the end of the shift. Accolade denies Ms. Hall's allegation and asserts that it paid HAs for all compensable work activities. Accolade also asserts that much of the allegedly unpaid time is not covered by the Federal Overtime Claim because, even if the time were credited, the HA's total weekly hours would still fall below 40.

The unpaid work claim described in the above paragraph does ***not*** apply to you, **[*Insert Name*]**, you never returned a form entitling you to pursue the Federal Overtime Claim.

| **3.** | **Why is there a settlement?** |
|---|---|

The Court has not decided who will win the lawsuit. So both the HAs and Accolade run the risk of losing.

***The settlement is a compromise***. It allows both sides to avoid the costs, delays, and risks of further litigation and provides money to Ms. Hall and other HAs covered by the settlement.

In reaching this settlement, Accolade denies that it violated any laws, and continues to assert that its pay practices were and are entirely legal.

| **4.** | **How much money will I recover under the settlement?** |
|---|---|

The Judge will decide whether the settlement should be approved as fair and reasonable. If the Judge approves the settlement, a total amount of $1,100,000 will be distributed to the 323 HAs covered by the lawsuit and to the lawyers identified in Section 9. If the Court approves the requested legal fees, expenses, and service awards, a total of $725,000.00 will be available to the 323 HAs covered by the lawsuit.

If the Court approves the settlement, you, **[*INSERT NAME*]**, will receive an individual payment in the gross amount of **$[*insert Payment Amount*]**. This gross payment amount is considered wage income. So your settlement check will be reduced to reflect all payroll deductions and taxes ordinarily paid by ***both*** employers and employees. You will receive an IRS W-2 Form reflecting this payment and the associated taxes and withholdings.

The method for determining the individual payment amounts owed to you and other individuals

covered by the settlement is described below:

- **Arizona HAs:**  Arizona HAs do not benefit from the PA Overtime Claim because they did not work in Pennsylvania.  Arizona HAs, therefore, are limited to the Federal Overtime Claim.  Under the payment formula, these individuals are entitled to: **(i)** $18.86 for each week employed as an HA between early-2015 and November 26, 2016 *plus* **(ii)** $30.00 for each week employed as an HA between November 27, 2016 and December 29, 2018.

- **Pennsylvania HAs Covered by Both the Federal Overtime Claim and the PA Overtime Claim:**  All Pennsylvania HAs covered by the settlement benefit from the PA Overtime Claim.  In addition, some of these Pennsylvania HAs also benefit from the Federal Overtime Claim because they previously returned the form required to pursue such claim.  Under the payment formula, these individuals are entitled to: **(i)** $28.28-$37.74 for each week employed as an HA between August 1, 2014 and November 26, 2016 *plus* **(ii)** $30.00 for each week employed as an HA between November 27, 2016 and December 29, 2018.

- **Pennsylvania HAs Covered by the PA Overtime Claim Only:**  Pennsylvania HAs who did not previously return the form required to pursue the Federal Overtime Claim are nonetheless covered by the PA Overtime Claim because they worked in Pennsylvania.  ==YOU, *[INSERT NAME]*, FALL INTO THIS CATEGORY.==  Under the payment formula, you are entitled to $28.28 for each week employed as an HA between August 1, 2014 and November 26, 2016.  Your Gross Payment of ==**$[*insert Payment Amount*]**== is based on this formula.

If you have any questions about the determination of your payment amount, please call one of the law firms listed in Section 9.

Also, please keep in mind that the settlement payments described above will be made *only if* the Judge approves the settlement.

| **5.** | **How can I receive a settlement payment?** |
|---|---|

If this Notice is addressed to you, then you are covered by the settlement and ***you do not need to do anything to receive a settlement payment.***  Of course, the payment will not be made unless the Judge approves the settlement.

| **6.** | **What do I give up by receiving a settlement payment?** |
|---|---|

If you do not exclude yourself from the settlement by following the procedures in Section 7, you will release and forever discharge Accolade (as well as its past, present, or future parents, subsidiaries, affiliates or related companies, successors, and predecessors, as well as their respective past, present, and future owners, officers, directors, agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, attorneys, and insurers) from all claims arising between August 1, 2014 and ==*[Insert Final Approval Date]*== and asserted in or related to the Action, including, but not limited to, all such claims seeking unpaid overtime wages under the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.*, the Pennsylvania Minimum Wage Act, 43 P.S. §§ 333.101, *et seq.*, the Pennsylvania Wage Payment and Collection Law, 43

3

P.S. § 260.1 *et seq*., the Arizona Wage Law, Ariz. Rev. Stat. §§ 23-350, *et seq*., or any other federal, state, or local statute, regulation, ordinance, or common law theory seeking unpaid wages or any associated penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation costs, restitution, or equitable relief.

If you have any questions about the scope of this release, please call one of the law firms listed in Section 9.

| 7. | How do I exclude myself from this settlement? |
|---|---|

If you do not want to participate in the settlement, then you must take steps to exclude yourself.

To exclude yourself, you must prepare a note or letter simply stating: "I wish to be excluded from the Accolade Wage Lawsuit." The letter or note may be typed or handwritten. Be sure to include your signature, printed full name, address, and phone number. To be valid, your exclusion request must be postmarked no later than **[INSERT DATE]** and be mailed to: Accolade Wage Lawsuit, c/o Settlement Services, Inc., 2032-D Thomasville Road, Tallahassee, FL 32308.

Importantly, if you exclude yourself from the settlement, you will not receive any money payment, you will not be legally bound by the settlement, and you will not waive or release any legal claims against Accolade.

| 8. | How do I object to the settlement? |
|---|---|

You can object to the settlement if you believe it is unfair or should not be approved. The Judge will consider your objection in deciding whether to approve the settlement.

To object to the settlement, you must prepare a letter or note stating that you "object" to the settlement in the Accolade Wage Lawsuit. The letter or note may be handwritten. Be sure to include your signature, printed full name, address, and telephone number. You may (but are not required to) consult with or retain an attorney to assist you in drafting the objection. If you are not being assisted by an attorney, simply do your best to describe the reasons why you object to the settlement. However, if you object, your written objection must state with specificity the grounds for your objection. Also, you must state whether the objection applies to you alone, to you and some other HAs covered by the settlement, or to you and all other HAs covered by the settlement.

To be valid, your objection *must be postmarked on or before* **[INSERT DATE]** and must be mailed to: Accolade Wage Lawsuit, c/o Settlement Services, Inc., 2032-D Thomasville Road, Tallahassee, FL 32308.

| 9. | Do I have a lawyer? |
|---|---|

Plaintiff and other individuals who do not exclude themselves from the settlement are represented by the following law firms: (i) **Winebrake & Santillo, LLC**, 715 Twining Road, Suite 211, Dresher, PA 19025; Phone **(215) 884-2491**; and (ii) **Hardwick Benfer, LLC**, 179 North Broad Street, Doylestown, PA 18901; Phone **(215) 230-1912**. Lawyers from these firms will answer your questions about the lawsuit and settlement free of charge and in strict confidence. If you call, please identify yourself as a "Class Member" in the "Accolade Wage Lawsuit" and ask to speak with one of the assigned lawyers.

4

**10.      How do the lawyers get paid and does Ms. Hall get any extra money?**

You will **_not_** pay any legal fees or expenses out of your individual settlement payment described in Section 4.  Rather, the above firms will ask the Judge to approve legal fees and expenses of $363,000 (which is 33% of the total $1,100,000 settlement payment).  The Judge has not yet decided whether she will approve these requested fees and expenses.

In addition, the above lawyers will ask the Judge to approve extra "service award" payments of $10,000 to Ms. Hall and $1,000 to two HAs who were required to testify at depositions.  The Judge has not yet decided whether she will approve these requested service awards.

**11.      When and where will the Court decide whether to approve the settlement?**

The Court will hold a hearing to decide whether to approve the settlement.  You are not required or expected to attend that hearing.  However, you are welcome to attend.

During the hearing, the Judge will consider whether the $725,000 in payments to the 323 individuals covered by the settlement are fair and should be approved.  The Judge also will consider the fairness and reasonableness of the $363,000 in requested legal fees and expenses and the $12,000 in requested service awards.  In making her decision, the Judge will consider any written objections to the settlement and will hear from any individuals (or their legal representatives) who wish to be heard.

The hearing will take place on [*Insert Date*] at [*Insert Time*] in Courtroom [*Insert Room Number*] of the United States Courthouse, 601 Market Street, Philadelphia, PA 19106.

**12.      How do I obtain more information?**

This Notice summarizes the most important aspects of the proposed settlement.  You can obtain further information by calling one of the law firms listed in Section 9.

Dated:  [*Insert Date*]               Approved:      Hon. Gene E.K. Pratter
                                                     United States District Court
                                                     Eastern District of Pennsylvania